**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHELSEA OLIVER**                                    **CIVIL ACTION**

**VERSUS**                                                    **NO. 21-1831**

**ROEHM AMERICA, LLC et al.**                  **SECTION: "G"(4)**

## ORDER AND REASONS

This litigation arises from an alleged controversy over Defendant Roehm America, LLC's ("Roehm") termination of Plaintiff Chelsea Oliver ("Oliver").[1] Oliver brings claims against Andrew Stillufsen ("Stillufsen") and Yolanda Brown ("Brown") (collectively, "Movants") alleging violations of the Family and Medical Leave Act of 1993 ("FMLA") and Louisiana law. Before the Court is Movants' Motion to Dismiss the Second Amended Complaint.[2] In the motion, Movants argue that Oliver's Second Amended Complaint[3] fails to state a claim against them and so all of the claims against Movants should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] Stillufsen also moves for the claims against him to be dismissed for lack of personal jurisdiction under Rule 12(b)(2).[5] Oliver opposes the motion.[6] Movants reply in further

---

[1] *See* Rec. Doc. 48.

[2] Rec. Doc. 51.

[3] Rec. Doc. 48.

[4] Rec. Doc. 51.

[5] *See* Rec. Doc. 51-1 at 3.

[6] Rec. Doc. 55.

support of the motion.[7] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion to the extent that it seeks dismissal of Oliver's state law claims against Movants and denies the motion in all other respects.

## I. Background

On October 5, 2021, Oliver filed a Complaint in this Court against Roehm, Brown, and Stillufsen.[8] On December 12, 2021, Oliver filed a First Amended Complaint.[9] On March 29, 2022, Oliver filed the instant Second Amended Complaint naming Roehm, Brown, Stillufsen, Chubb Insurance Company of New Jersey, and Federal Insurance Company as defendants (collectively, "Defendants").[10] In the Second Amended Complaint, Oliver alleges that she was hired by Evonik Cyro, LLC ("Evonik") in March 2017 to work at a methacrylate production facility located at 10800 River Road, Westwego, Louisiana (the "Facility") as an administrative assistant and was one of only four female employees at the Facility.[11] Oliver avers that Roehm became the owner of the Facility in September 2019.[12] Oliver contends that, when she was hired, she was told "that [Evonik] had a tuition reimbursement policy;" however, upon beginning her employment, she was told that the policy only applied to management and, despite earning merit raises and bonuses, she

---

[7] Rec. Doc. 65.

[8] Rec. Doc. 1.

[9] Rec. Doc. 17.

[10] Rec. Doc. 48.

[11] *Id*. at 3, 5.

[12] *Id*. at 3.

was not granted tuition reimbursement nor promoted through June 2019.[13] In July 2019, Oliver alleges that she submitted another request for reimbursement and was told "that she was in fact eligible for tuition reimbursement."[14] Thus, "she submitted the necessary paperwork, and yet, never received any reimbursement."[15]

Oliver alleges that, after Roehm took over the Facility, new managers were hired and new policies were initiated, but the tuition reimbursement policy stayed the same; yet, the interim Plant Manager, Drew Scott ("Scott"), never granted her tuition reimbursement despite telling her she was eligible and that other male employees were receiving reimbursement.[16] Oliver avers that, although Scott ignored her requests for a raise, promotion, and tuition reimbursement through January 2020, Scott encouraged male employees to take classes, offered them tuition reimbursement, waived educational requirements for promotion for one employee who declined to take classes, and gave a "spot bonus" to another who took classes but declined the reimbursement terms.[17]

Oliver contends that, in February 2020, Roehm hired Brown as a human resources manager and site manager of the Facility.[18] Oliver alleges that, in March 2020, Oliver requested and received approval for FMLA leave from March 3, 2020, until March 15, 2020, "for a knee surgery

---

[13] *Id*. at 5–6.

[14] *Id*. at 6.

[15] *Id*. Oliver alleges that she paid $17,063.56 in tuition during this time that should have been reimbursed. *Id*. at 7.

[16] *Id*.

[17] *Id*. at 7–8. Oliver alleges that, meanwhile "in 2020, a female contractor left because she felt she was subjected to a hostile work environment based on her gender." *Id*. at 7.

[18] *Id*. at 8.

3

her physician suggested she undergo" due to chronic pain ( "First FMLA Leave").[19] Oliver avers that, after her First FMLA Leave, she worked from home based on Scott's instructions due to COVID-19 and her doctor's recommendation; however, she was removed from remotely-held meetings she had previously attended and was barred from working overtime despite previously working hundreds of overtime hours per year.[20]

Oliver alleges that, in August 2020, her doctor determined the knee surgery had failed and she required a second surgery. Therefore, she was granted FMLA leave from August 18, 2020, until August 30, 2020,[21] which was extended until October 30, 2020 ("Second FMLA Leave").[22] Oliver contends that, "[i]mmediately after she left for [her Second FMLA Leave], [] Brown started building up a case to terminate [her]" by "investigating her hours and timesheets."[23] Oliver avers that, on August 30, 2020, she submitted comments as part of her performance review requesting a promotion, never heard back from her supervisor, and was terminated on October 6, 2020, during a call from Brown, Stillufsen, as Roehm's General Counsel, and Roehm's Corporate Vice President of Human Resources.[24] During the phone call, Oliver alleges that Brown told her she should be at work based on Facebook photos Oliver had posted playing with her child and accused

---

[19] *Id*. at 9.

[20] *Id*. at 9–10.

[21] *Id*. at 11.

[22] *Id*. Oliver alleges that she utilized Roehm's group health benefits program and disability benefits during both her First FMLA Leave and Second FMLA Leave. *Id*. at 9, 11.

[23] *Id*. at 12.

[24] *Id.* at 12–13. Oliver alleges that, after she began her Second FMLA Leave, but prior to her termination, unbeknownst to her, her supervisor "posted several job positions for which [she] was qualified" and Brown informed Roehm's staff not to communicate with her during her leave. *Id*. at 12. Oliver alleges that, after she was terminated, Roehm hired a man to one of the new positions who had never taken FMLA leave. *Id*.

her of falsifying her FMLA leave, disability pay, and overtime requests.[25] Oliver contends that, from January 2020 to March 2020, she alerted Roehm that numerous male employees falsified their hours but these employees "were never disciplined."[26] Furthermore, Oliver asserts that a male employee on extended leave due to a shoulder and back injury "posted numerous photos on Facebook . . . [of him] enjoying time with his family, including traveling and carrying his grandchildren," but "was not terminated, investigated or disciplined in any way."[27]

Oliver alleges that, after her termination, Stillufsen responded to her letter alleging Roehm had violated her legal rights by threatening to sue her for over $71,000 in approved overtime and short-term disability pay.[28] Oliver contends that, on June 28, 2021, she filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Roehm "alleging disability and gender discrimination, and retaliation" (the "EEOC Charge").[29] Oliver alleges that she was issued a notice of right to sue by the EEOC on December 21, 2021.[30] Oliver avers that she was replaced at Roehm by "a man who had not engaged in protected activity under federal or state law and did not have any disabilities."[31]

---

[25] *Id*. at 14. Oliver alleges that Brown and Stillufsen refused her request to "look at her notes" when they asked her about specific hours she worked on days in December 2019 and April 2020, threatened to make her repay wages to Roehm, and sent her a letter "claiming that even after her termination 'there is still an ongoing investigation' into her." *Id*.

[26] *Id*. at 15.

[27] *Id*.

[28] *Id*. at 16.

[29] *Id*. Oliver alleges that, in his response submitted to the EEOC, Stillufsen stated that Oliver's performance was below expectations, even though "her supervisors never provided this feedback during her employment" and threatened to sue her for $25,901 in overtime pay if she pursued her claims. *Id*. at 16–17.

[30] *Id*. at 4.

[31] *Id*. at 17.

Oliver brings three claims against Movants: (1) interference with and retaliation for Oliver's exercise of her FMLA rights ("FMLA Claim");[32] (2) intentional interference with Oliver's employment contract with Roehm ("Intentional Interference with Contract Claim");[33] and (3) intentional infliction of emotional distress ("IIED") for terminating Oliver after promising her protective leave to recover from her knee surgery and then repeatedly threatening to sue in violation of Louisiana law ("IIED Claim").[34]

On April 12, 2022, Movants filed the instant motion to dismiss.[35] On May 3, 2022, Oliver filed an opposition to the motion.[36] On May 13, 2022, Movants filed a reply in further support of the motion.[37]

## II. Parties' Arguments

### A.    *Movants' Arguments in Support of the Motion*

Movants ask the Court to dismiss all claims pending against them.[38] Movants argue that the Second Amended Complaint fails to state a claim against them, and so the claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[39] Movants also argue that the

---

[32] *See id.* at 17–19.

[33] *Id*. at 30–31. The Second Amended Complaint misstates that this claim arises under La. Rev. Stat. § 2315, a provision that does not exist in Louisiana statutory law. *Id*. at 30. However, La. Civ. Code art. 2315 is "the 'fountainhead' of tort responsibility in Louisiana." *Veazey v. Elmwood Plantation Assocs., Ltd.*, 93-2818 (La. 11/30/94); 650 So. 2d 712, 717.

[34] *Id*. at 32–33.

[35] Rec. Doc. 51.

[36] Rec. Doc. 55.

[37] Rec. Doc. 65.

[38] Rec. Doc. 51-1 at 1.

[39] *See id.* at 7.

Court lacks personal jurisdiction over Stillufsen and so Oliver's claims against him should be dismissed pursuant to Rule 12(b)(2).[40] The Court summarizes each argument in turn.

### 1.   Movants' Arguments in Support of Dismissal Pursuant to Rule 12(b)(6)

Movants argue that the FMLA Claim, Intentional Interference with Contract Claim, and IIED Claim against them should be dismissed pursuant to Rule 12(b)(6). The Court summarizes Movants' arguments regarding each claim in turn.

#### a.   *FMLA Claim*

Movants argue that the FMLA Claim should be dismissed because neither Brown nor Stillufsen was an employer subject to liability under the FMLA.[41] Specifically, Movants contend that Oliver fails to allege that Movants had sufficient control over her to be considered employers under the Fifth Circuit's "economic reality" test.[42] Movants aver that the Second Amended Complaint contains only "formulaic recitations of the requirements of the economic reality test . . . to which no presumption of truth attache[s]."[43]  Furthermore, Movants assert that the Second Amended Complaint does not allege that Movants had the power to hire Oliver or set her pay, as neither were employed at the time of her hiring.[44] Movants also aver that they did not instruct her to take FMLA leave, deny her requests for promotions, raises, and tuition reimbursement, or oversee her hours.[45]

---

[40] *See id.* at 3.

[41] *See id.* at 14.

[42] *Id*. at 15 (citing *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014)).

[43] *Id*. at 16 (citing Rec. Doc. 48 at 12–13).

[44] *Id*. at 16–17.

[45] *Id*. at 17–18.

Movants further argue that Brown's removing Oliver's intranet access and telling Roehm staff not to speak to her are not actions, "in of themselves, violative of the FMLA" because "such measures can prevent interference with an employee's FMLA leave."[46] Movants aver that, although Oliver contends that Brown and Stillufsen sought "to verify what she was working on during specific hours . . ., that allegation actually shows that [Movants] did not supervise or control her hours."[47] Movants also contend that, even if Oliver could establish their liability under the FMLA, "there is no proper reason" for Oliver to proceed against them because "all relief available under the Act can be recovered from [Roehm]."[48] Therefore, Movants conclude that the FMLA Claim against them should be dismissed.[49]

### b.    *Intentional Interference with Contract Claim*

Movants argue that the Intentional Interference with Contract Claim should be dismissed because Oliver fails to allege "the existence of a contract or legally protected interest" between her and Roehm.[50] Movants assert that the Second Amended Complaint "does not allege that [Oliver] had an actual contract of employment with Roehm.[51] Therefore, Movants conclude that, because Louisiana law presumes at-will employment, and "Louisiana courts do not recognize a claim for interference with contract by at-will employees," the claim should be dismissed.[52]

---

[46] *Id*. at 18.

[47] *Id*. at 19 (quoting Rec. Doc. 48 at 14).

[48] *Id*. at 14, n.6.

[49] *Id*.

[50] *Id*. at 10 (quoting *9 to 5 Fashions, Inc. v. Spurney*, 88-0902 (La. 1/30/89); 538 So. 2d 228, 232–34).

[51] *Id*. (quoting Rec. Doc. 48 at 30).

[52] *Id*. at 10–11.

     *c.*    IIED Claim

Movants argue that the IIED Claim should be dismissed because their conduct was not "extreme and outrageous" as required to sustain such a claim under Louisiana law.[53] Movants aver that "Roehm's act of terminating [Oliver's] employment based on alleged overtime and FMLA fraud was utterly reasonable."[54] Movants also contend that correspondence with Oliver's counsel post-termination denying Oliver's allegations and threatening to pursue claims against her was a right and an action that does not rise to the level necessary to assert a claim of intentional infliction of emotional distress.[55] Therefore, Movants conclude that the Court should dismiss the IIED Claim against them.[56]

### 2.    Movants' Arguments in Support of Dismissal of the Claims against Stillufsen Pursuant to Rule 12(b)(2)

Movants make two arguments to support the assertion that the Court should dismiss the claims against Stillufsen for lack of personal jurisdiction. First, Movants argue that the Second Amended Complaint "fails to plead any facts whatsoever showing 'continuous and systematic' contacts by him such as would justify the Court's exercise of general jurisdiction over him."[57]

Second, Movants assert that "the Court cannot exercise specific jurisdiction over [Stillufsen] because the [Second Amended Complaint] does not set forth well-pleaded allegations

---

[53] *See id.* at 11 (citing *White v. Monsanto Co.*, 91-0148 (La. 9/9/91); 585 So. 2d 1205, 1209).

[54] *Id*. at 12.

[55] *Id*. at 13 (citing *Bordelon v. Wells Fargo Fin. La., LLC*, No. 18-2563, 2018 WL 3587690 (E.D. La. July 26, 2018); *Greater New Orleans Fair Hous. Action Ctr., Inc. v. Dopp*, No. 13-6769, 2014 WL 1652514 (E.D. La. Apr. 23, 2014); *DirecTV, Inc. v. Atwood,* No. 03-1457, 2003 WL 22765354 (E.D. La. Nov. 19, 2003)).

[56] *Id*. at 14.

[57] *Id*. at 6

showing that he has purposely availed himself of any privileges under Louisiana law or purposely directed his activities toward the state vis-à-vis this lawsuit."[58] Movants aver that Stillufsen's presence on the October 6, 2020 call terminating Oliver, his subsequent responses to communications from Oliver's counsel, and his statement in response to Oliver's EEOC Charge are his "only contact[s] with the state of Louisiana in connection with [Oliver's] claims.[59] Movants also contend that, even if these contacts were deemed forum-related, no actionable claim resulted from them.[60] Finally, Movants argue that the Court's exercise of personal jurisdiction over Stillufsen would not be fair and reasonable.[61] Therefore, Movants conclude that the Court should dismiss all claims against Stillufsen pursuant to Federal Rule of Civil Procedure 12(b)(2).[62]

## B.   *Oliver's Arguments in Opposition to the Motion*

In opposition, Oliver argues that the Court should deny Movants' motion.[63] The Court first summarizes Oliver's arguments why the Second Amended Complaint properly states the FMLA Claim, Intentional Interference with Contract Claim, and IIED Claim. The Court then summarizes Oliver's arguments why this Court has personal jurisdiction over Stillufsen.

---

[58] *Id.*

[59] *Id.* (citing Rec. Doc. 48 at 13, 15–17).

[60] *Id.* at 7.

[61] *Id.*

[62] *Id.*

[63] Rec. Doc. 55 at 17.

1.      **Oliver's Arguments Against Dismissal Pursuant to Rule 12(b)(6)**

        *a.*    *FMLA Claim*

Oliver argues that the FMLA Claim should not be dismissed because, contrary to Movants' suggestion, the Second Amended Complaint properly alleges that Brown and Stillufsen had the power to fire Oliver, supervise and control her work schedule, determine her rate and method of pay, keep her employment records, and promote her.[64] Furthermore, Oliver asserts that she provided additional details to support these allegations by stating that Brown and Stillufsen investigated her overtime timesheets, terminated her on October 6, 2020 telephone call, and refused to allow her to look at her notes during that call.[65] Finally, Oliver avers that there is "no legal support for the contention that [Movants] should be dismissed because [Roehm] may also be liable," Oliver may pursue all avenues for recovery, and Defendants would be jointly and severally liable for damages in this case.[66] Oliver contends that holding Movants liable "can also serve to fulfill the statutory purpose of the FMLA by, hopefully, changing [Movants'] practices and preventing similar violations of the FMLA in the future."[67] Therefore, Oliver concludes that the FMLA Claim should not be dismissed.[68]

---

[64] *Id*. at 6–7 (quoting Rec. Doc. 48 at 12–13).

[65] *Id*. at 7 (citing Rec. Doc. 48 at 12, 14, 16–17).

[66] *Id*. at 8.

[67] *Id*.

[68] *See id.* at 17.

> b.    *Intentional Interference with Contract Claim*

Oliver argues that Movants' sole argument for dismissing the Intentional Interference with Contract Claim is that Oliver was Roehm's at-will employee.[69] However, Oliver asserts that the Second Amended Complaint pled facts sufficient to suggest the existence of an employment agreement by alleging "percentage merit-based raises, short- and long-term disability benefits, job-protected FMLA leave, and health insurance among other benefits."[70] Therefore, Oliver concludes that the Intentional Interference with Contract Claim should not be dismissed.[71]

> c.    *IIED Claim*

Oliver incorporates the arguments made in her opposition to Roehm's motion to dismiss regarding the IIED Claim.[72] In Oliver's opposition to Roehm's motion to dismiss, Oliver argues that the IIED Claim should not be dismissed because this is not a "run of the mill discrimination and harassment employment dispute," but a case where "Defendants took intentional and active steps to retaliate, terminate, and intimidate [Oliver] to not pursue her legal claims."[73] Oliver argues that the cases on which Roehm relies are either Title VII cases not helpful to a Louisiana tort law claim or did not involve "parties who had a pre-existing relationship as employee-employer, . . . where [an] employer used their substantial resources to intimidate a current employee dependent

---

[69] *Id*. at 9.

[70] *Id*. (citing Rec. Doc. 48 at 1, 5–6, 9, 11).

[71] *See id*.

[72] *Id*. (Oliver incorrectly cites Rec. Doc. 50-1 at 18–21); *see also* Rec. Doc. 58 (Oliver's opposition to Roehm's motion to dismiss).

[73] Rec. Doc. 58 at 37.

on the employer to protect her position."[74] Oliver also avers that Defendants' outrageous conduct included investigating and terminating her, not just threatening to sue her if she filed an EEOC charge.[75] Finally, Oliver contends that Stillufsen's threat was also outrageous given that it violated Disciplinary Rule 7-105(a), under which a New York lawyer may not threaten criminal charges to gain an advantage in a civil matter.[76] Therefore, Oliver concludes that the IIED Claim should not be dismissed.[77]

### 2.    Oliver's Arguments in Opposition to Dismissal of the Claims against Stillufsen Pursuant to Rule 12(b)(2)

Oliver argues that Stillufsen's work for Evonik and Roehm established "significant contact" with Louisiana such that the Court has personal jurisdiction over him in this matter.[78] Oliver avers that this contact includes overseeing legal compliance and providing legal advice to Roehm regarding the Facility, "traveling to Louisiana for a union meeting and insurance dispute, assisting with the settlement of penalties and violations in [Louisiana] and serving as a manager for Roehm's Louisiana location, as identified in the Louisiana Secretary of State's records."[79] Oliver further contends that Stillufsen directly participated in her termination, was consulted about her, called her, questioned her about overtime and short-term disability benefits fraud, engaged her legal counsel, and responded to her EEOC Charge.[80] Oliver asserts that these actions by

---

[74] *Id*. at 38–39.

[75] *Id*. at 39.

[76] *Id*. at 39–40.

[77] *Id*. at 40.

[78] Rec. Doc. 55 at 4, 11–12.

[79] *Id*. (citing Rec. Doc. 51-2).

[80] *Id*. at 4–5.

Stillufsen constitute contact with Louisiana because they were directed at her and she was located and employed in the state at the time.[81]

Oliver also argues that Stillufsen's contacts with Louisiana "extend even further" than he discloses.[82] Oliver avers that filings with the Louisiana Secretary of State on June 23, 2021, name Stillufsen as Manager of Roehm.[83] Furthermore, Oliver asserts that Stillufsen worked for Evonik, the previous owner of the Facility, "at least as far back as 2019," notarized Scott's signature on two settlement agreements with the Louisiana Department of Environmental Quality ("LDEQ"), and was included on emails regarding those settlement negotiations.[84] Therefore, Oliver contends that "specific jurisdiction is appropriate because [Stillufsen's] actions in Louisiana led directly to the claims in this case," and general jurisdiction is appropriate because Stillufsen had "sufficient, systemic contacts with Louisiana."[85] Oliver also argues that Movants fail to make any argument why the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice" where "Stillufsen has served as counsel providing employment and other advice over [the Facility] for years, fired [Oliver], and then engaged with her attorney and administrative agencies in Louisiana before litigation."[86] Therefore, Oliver concludes that the Court can properly maintain

---

[81] *See id.*

[82] *Id.* at 13.

[83] *Id.* (citing Rec. Doc. 58-4).

[84] *Id.* at 13–14 (citing Rec. Doc. 51-2; Rec Doc. 58-5; Rec. Docs. 58-1, 58-2, 58-3).

[85] *Id.* at 14–15.

[86] *Id.* at 15–16.

personal jurisdiction over Stillufsen or, in the alternative, should transfer the claims to New Jersey.[87]

## C.      *Movants' Arguments in Further Support of the Motion*

In reply, Movants make four arguments in further support of the motion to dismiss. First, Movants argue that the FMLA Claim against them should be dismissed because the Second Amended Complaint does not give plausible additional details to support the "conclusory allegations" that Movants had sufficient power over Oliver to satisfy the economic reality test.[88] Movants aver that it is not plausible that Stillufsen, as general counsel of a multi-national corporation, "oversaw [Oliver's] work schedule while serving as an administrative assistant to the plant manager of the [Facility]."[89] Movants also assert that it is not plausible that they oversaw Oliver's hours and pay "because they investigated her timesheets for hours worked from November 2019 through February 2020."[90] Movants contend that Stillufsen was only consulted about Oliver's termination but that "management at the [Facility] made the ultimate decision to terminate her employment."[91] Thus, Movants conclude that the FMLA Claim against them should be dismissed.[92]

---

[87] *Id*. at 17.

[88] Rec. Doc. 65 at 5–6.

[89] *Id*. at 6.

[90] *Id*.

[91] *Id*.

[92] *Id*.

Second, Movants argue that the Intentional Interference with Contract Claim should be dismissed because Oliver fails to rebut the presumption that she was Roehm's at-will employee by asserting the existence of an employment contract for a limited term.[93]

Third, Movants argue that the IIED Claim should be dismissed because Oliver cites no authority suggesting that Stillufsen and Brown's actions during the October 6, 2020 telephone call rise to the level of extreme and outrageous conduct, and because "the threat of a lawsuit cannot support an IIED claim."[94]

Fourth, Movants argue that Court has neither general nor specific jurisdiction over Stillufsen in this matter.[95] Movants aver that Stillufsen's being consulted over Oliver's termination "in no way demonstrates that he had 'continuous and systematic' contacts with Louisiana, nor shows his 'purposeful availment of the benefits and protections' of Louisiana law."[96] Movants further assert that Stillufsen did not fail to disclose his contacts with Louisiana to this Court because Oliver fails to cite any cases supporting the idea that his being listed as a "Manager" on Roehm's Louisiana filings, notarizing Scott's signature on settlement agreements with the LDEQ, and being included on emails involving the LDEQ to which he did not respond "could lead to personal jurisdiction over [Stillufsen]."[97] Movants contend that Oliver's suggestion that personal

---

[93] *See id.* at 2–3 (quoting *Oncale v. CASA of Terrebone Parish, Inc.*, No. 19-14760, 2020 WL 3469838, at *17 (E.D. La. June 25, 2020)).

[94] *Id.* at 4–5. Movants also refute Oliver's argument that Stillufsen's conduct violated New York Disciplinary Rule 7-105(a), arguing that he "never threatened to file criminal charges." *Id.* at 5 n.3.

[95] *Id.* at 7.

[96] *Id.*

[97] *Id.* at 8–9. Movants aver that Oliver "failed to consider the possibility that these 'contacts' were so fleeting that [Stillufsen] did not even remember them." *Id.*

jurisdiction is warranted based on Stillufsen's responding to the EEOC charge is "such an absurd approach to personal jurisdiction" that there is "only one such instance in the entire country in which the court denied such an argument."[98] Finally, Movants also argue that, although they did not specifically address the issue of whether personal jurisdiction would offend traditional notions of fair play and substantial justice "because Stillufsen never purposefully availed himself of the benefits and protections of Louisiana law, . . . [s]uffice it to say that subjecting the General Counsel of a multinational corporation to jurisdiction based only on his position with [Roehm] would no doubt offend such notions." Therefore, Movants conclude that this Court lacks personal jurisdiction over Stillufsen.[99]

### III. Legal Standard

**A.** *Legal Standard for a Rule 12(b)(6) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[100] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[101] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[102] "Factual allegations must be enough to raise a right to relief above the

---

[98] *Id*. at 9 (citing *Lane v. Lucent Techs., Inc.*, 388 F.Supp.2d 590 (M.D.N.C. 2005)).

[99] *See id.* at 7.

[100] Fed. R. Civ. P. 12(b)(6).

[101] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[102] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

speculative level."[103] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[104]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[105] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[106] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[107] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[108] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[109] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[110] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[111] If factual allegations are insufficient to raise a right to relief

---

[103] *Twombly*, 550 U.S. at 555.

[104] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[105] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[106] *Iqbal*, 556 U.S. at 678–79.

[107] *Id.* at 679.

[108] *Id.* at 678.

[109] *Id.*

[110] *Id.*

[111] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[112]

## B.     *Legal Standard for a Rule 12(b)(2) Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a plaintiff's claims when the court does not have personal jurisdiction over a defendant.[113] The party seeking to invoke the power of the court "bears the burden of establishing jurisdiction, but need only present *prima facie* evidence."[114] To determine whether a prima facie case exists, a district court accepts "uncontroverted allegations in the complaint" as true and resolves "any factual disputes" in favor of the party seeking to invoke the court's jurisdiction.[115]

The Louisiana long-arm statute confers jurisdiction to the limits of due process.[116] Thus, because Louisiana's long-arm statute confers jurisdiction to the limits of due process, a federal court must determine only whether subjecting the defendant to suit in Louisiana comports with the Due Process Clause.[117] Due process permits the exercise of personal jurisdiction over a nonresident defendant when (1) the defendant "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state"[118] and (2) the court's

---

[112] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[113] Fed. R. Civ. P. 12(b)(2).

[114] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

[115] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 176 (5th Cir. 2013) (quoting *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 496 (5th Cir. 2012)).

[116] La. Rev. Stat. § 13:3201.

[117] *Dickson Marine Inc. v. Panalpina, Inc*., 179 F.3d 331, 336 (5th Cir. 1999) (noting that only the Due Process Clause analysis is necessary).

[118] *Cent. Freight Lines Inc. v. APA Transp. Corp*., 322 F.3d 376, 380 (5th Cir. 2003) (quoting *Int'l Shoe Co.*

exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice."[119] The "minimum contacts" analysis "may result in either specific or general jurisdiction."[120] "General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and 'continuous and systematic' but unrelated to the instant cause of action."[121] On the other hand, specific jurisdiction may be asserted when the non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[122]

**IV. Analysis**

In the instant motion, Movants argue that (1) Oliver's claims against Movants should be dismissed for failure to state a claim and (2) Oliver's claims against Stillufsen should be dismissed for lack of personal jurisdiction.

**A.    *Dismissal for Failure to State a Claim***

Movants argue that the Second Amended Complaint fails to state a claim against them.[123] Oliver argues that the Second Amended Complaint properly states the FMLA Claim, Intentional Interference with Contract Claim, and IIED Claim against Movants.[124] The Court addresses each claim in turn.

---

*v. Washington*, 326 U.S. 310, 319 (1945)).

[119] *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

[120] *Torgeson v. Nordisk Aviation Prod., Inc.*, 997 F.2d 881 (5th Cir. 1993).

[121] *Cent. Freight Lines*, 322 F.3d at 381.

[122] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[123] *See* Rec. Doc. 51-1 at 7.

[124] *See* Rec. Doc. 55 at 5–9.

1.      **FMLA Claim**

In the instant motion, Movants argue that the FMLA Claim should be dismissed because neither Brown nor Stillufsen was an employer subject to liability under the FMLA.[125] Oliver argues that the FMLA Claim should not be dismissed because Brown and Stillufsen were employers under the FMLA.[126]

Pursuant to the Code of Federal Regulations regarding the FMLA, an employer includes any person acting, directly or indirectly, in the interest of a covered employer towards any of the employees of the employer, any successor in interest of a covered employer, and any public agency.[127] The Fifth Circuit looks to the Fair Labor Standards Act ("FLSA") to determine whether a person is an "employer" under the FMLA.[128] Movants do not dispute that Roehm is a covered employer. However, Movants argue that they are not employers based on their work for Roehm.

"The Fifth Circuit relies on the economic reality test when determining a party's status as an employer under the FLSA or the FMLA."[129] Under the economic reality test, the Court considers  "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3)

---

[125] Rec. Doc. 51-1 at 14.

[126] *Id*. at 6–7 (quoting Rec. Doc. 48 at 12–13).

[127] 29 C.F.R. § 825.104(a).

[128] *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006).

[129] *Oncale v. Terrebonne Parish, Inc.*, No. 19-14760, 2020 WL 3469838, at *13 (E.D. La. June 25, 2020) (citing *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (applying the economic reality test to an FLSA Claim); *Madathil v. Accenture LLP*, No. 18-511, 2019 WL 2913308, at *14 (E.D. Tex. May 29, 2019), report and recommendation adopted, No. 18-511, 2019 WL 2905037 (E.D. Tex. July 5, 2019) (applying the economic reality test to an FMLA Claim)).

determined the rate and method of payment, and (4) maintained employment records."[130] A plaintiff need not satisfy every element.[131] "In cases where there may be more than one employer, [the] court must apply the economic reality test to each individual or entity alleged to be an employer and each must satisfy the four part test."[132]

Thus, the Court will analyze each factor with respect to both Brown and Stillufsen. Turning to the first factor, the Second Amended Complaint plausibly alleges that Stillufsen, as Roehm's General Counsel, and Brown, as a human resources manager for Roehm and site manager of the Facility, had the power to hire and fire Roehm employees at the Facility.[133] Brown and Stillufsen were allegedly two of only three Roehm employees present on the October 6, 2020 telephone call during which they informed Oliver that she was terminated.[134] Furthermore, Brown and Stillufsen allegedly took an active role during the telephone call.[135] Brown allegedly stated she thought Oliver should be at work, that Oliver had falsified her request for FMLA leave, short-term disability leave, and overtime hours, and that Roehm would continue investigating her.[136] Stillufsen and Brown also allegedly refused to allow Oliver to look at her notes to verify specific hours she had worked.[137] Thus, it is plausible that Brown and Stillufsen had the power to fire

---

[130] *Orozco*, 757 F.3d at 448.

[131] *Id*.

[132] *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (internal quotation marks and citations omitted).

[133]  *See* Rec. Doc. 48 at 13–14.

[134] *Id*. at 14; Rec. Doc. 51-2 at 3.

[135] *See* Rec. Doc. 48 at 14.

[136] *Id*.

[137] *Id*.

Oliver given that they allegedly took an active role in determining that Oliver would be terminated and informing her of the decision.[138]

Similarly, the Court finds it plausible that Brown and Stillufsen supervised and controlled Oliver's work schedule and conditions of employment. The Second Amended Complaint alleges that Brown investigated Oliver's hours and timesheets after she began the Second FMLA Leave and accused her of falsifying her overtime hours during the October 6, 2020 telephone call.[139] Stillufsen also stated, in a signed letter to Oliver's attorney, that "[w]e have calculated the total amount of overtime and [short-term disability] payments made to [Oliver] in 2019 and 2020 at over $71,000."[140] Furthermore, the Second Amended Complaint also suggests that Brown controlled the conditions of Oliver's employment by alleging that Brown informed Roehm staff not to speak to Oliver during her Second FMLA Leave and removed Oliver's intranet access.[141] Thus, it is plausible that Brown and Stillufsen supervised and controlled Oliver's work schedule and conditions of employment based on their investigation of Oliver's hours and Brown's actions during the Second FMLA Leave.

Although no facts alleged in the Second Amended Complaint show that Brown or Stillufsen satisfies the third or fourth elements of the economic reality test, Oliver need not establish every element to plausibly state that Movants were covered employers under the

---

[138] *See Oncale*, 2020 WL 3469838, at *13 (finding that an executive director and board president possessed the power to hire and fire employees because they communicated to plaintiff they were considering firing her and later informed her she had been terminated).

[139] Rec. Doc. 48 at 12, 14.

[140] Rec. Doc. 51-2 at 9.

[141] Rec. Doc. 48 at 13.

FMLA.[142] Thus, the Court finds that Oliver alleges facts sufficient to satisfy the economic reality test. However, Movants also argue that the FMLA Claim against them should be dismissed because "all relief available under the [FMLA] can be recovered from [Roehm]."[143] The Court finds this argument unpersuasive. Movants cite no case law to support their contention. Furthermore, Oliver is entitled to pursue claims against defendants who are potentially liable for their actions.[144] Therefore, the Court concludes that dismissal of the FMLA Claim at this stage would be inappropriate because Oliver alleges enough factual matter to raise a reasonable expectation that discovery will reveal evidence that Brown and Stillufsen are covered employers under the FMLA.[145] Thus, the motion to dismiss must be denied with respect to the FMLA Claim.

### 2.    Intentional Interference with Contract Claim

In the motion to dismiss, Movants argue that the Intentional Interference with Contract Claim should be dismissed because Oliver fails to allege the existence of an employment contract between her and Roehm.[146] Oliver argues that the claim should not be dismissed because the Second Amended Complaint alleges facts sufficient to conclude that such an employment contract did exist.[147]

---

[142] *Orozco*, 757 F.3d at 448; s*ee also Oncale*, 2020 WL 3469838, at *14 (holding that defendants were covered employers under the FMLA where plaintiff failed to establish that they satisfied the third or fourth elements of the economic reality test).

[143] Rec. Doc. 51-1 at 14 n.6.

[144] *See* Rec. Doc. 55 at 8.

[145] *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[146] Rec. Doc. 51-1 at 10.

[147] Rec. Doc. 55 at 9.

The Louisiana Supreme Court has recognized an extremely limited cause of action for intentional interference with a contract.[148] The Fifth Circuit has also repeatedly recognized the limited nature of such a claim.[149] To succeed in an action against a corporate officer for intentional interference with a contract, a plaintiff must establish the following elements:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.[150]

Movants only argue that Oliver cannot establish the first element—the existence of a contract or a legally protected interest between Oliver and Roehm—because Oliver was an at-will employee.[151] "Louisiana law provides that employment contracts are either limited term or terminable at will."[152] A limited term contract exists where "the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause."[153] If the parties are "silent on the terms of the employment contract, the Civil Code provides the default rule of employment at-will."[154]

---

[148] *9 to 5 Fashions, Inc. v. Spurney*, 88-0902 (La. 1/30/89); 538 So.2d 228, 232–34.

[149] *Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 395–96 (5th Cir. 2012) (citing *Am. Waste & Pollution Control Co. v Browning-Ferris, Inc.*, 949 F.2d 1384 (5th Cir. 1991); *Egrov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453 (5th Cir. 1999)).

[150] *9 to 5 Fashions*, 538 So.2d at 234.

[151] Rec. Doc. 51-1 at 10.

[152] *Read v. Willwoods Cmty.*, 2014-1475 (La. 3/17/15); 165 So.3d 883, 887.

[153] *Id.*

[154] *Id.* (citing La. Civ. Code art. 2747).

"An at-will employee simply has no 'legally protected interest in h[er] employment.'"[155] Accordingly, an employment contract must provide for a limited term to create a legally protected interest sufficient to sustain a claim for intentional interference of contract.

If Oliver even had an employment contract with Roehm, Oliver only had a legally protected interest in her employment with Roehm if that contract provided for a limited term of employment. Oliver argues that the Second Amended Complaint alleges "facts which support the existence of an employment agreement, including percentage merit-based raises, short and long-term disability benefits, job-protected FMLA leave, and health insurance among other benefits."[156] Regardless of whether these allegations support the existence of an employment agreement, they do not support the existence of an employment agreement for a limited term. Given that the parties are silent on the length of the employment contract, the default rule of employment at-will applies. Therefore, Oliver has failed to allege that she had a legally protected interest in her employment at Roehm. Thus, Oliver's Intentional Interference of Contract Claim must be dismissed.

### 3.    IIED Claim

Movants also argue that the alleged conduct at issue does not reach the level of "extreme and outrageous" required to support a claim for IIED.[157] Oliver argues that the IIED Claim should not be dismissed because Movants "took intentional and active steps to retaliate, terminate, and intimidate [Oliver] to not pursue her legal claims."[158] To prevail on an IIED claim, a plaintiff must

---

[155] *Newsom v. Glob. Data Sys., Inc.*, 2012-412 (La. App. 3 Cir. 12/12/12); 107 So. 3d 781, 786 (quoting *Durand v. McGaw*, 93–2077, (La. App. 4 Cir. 3/29/94); 635 So.2d 409, 411).

[156] Rec. Doc. 55 at 9.

[157] Rec. Doc. 51-1 at 12.

[158] Rec. Doc. 58 at 37; *see also* Rec. Doc. 55 at 9.

show that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff's emotional distress was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from the conduct at issue.[159]

Movants only argue that Oliver cannot establish the first element—that Movants' conduct was extreme and outrageous. A defendant's conduct satisfies the "extreme and outrageous" standard if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[160] "Merely tortious or illegal conduct does not rise to the level of extreme and outrageous."[161] Although activity in the Louisiana workplace environment can give rise to a cause of action for IIED, "this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time."[162]

Oliver alleges in the Second Amended Complaint that Movants' terminating Oliver as she recovered from knee surgery "after promising her protected leave, and then repeatedly threatening to sue her, was extreme and outrageous."[163] Movants argue that "terminating [Oliver's] employment based on alleged overtime and FMLA fraud was utterly reasonable" and, thus, did

---

[159] *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (citing *White v. Monsanto Co.*, 91-0148 (La. 9/9/91); 585 So. 2d. 1205, 1209).

[160] *White*, 585 So. 2d at 1209.

[161] *W.T.A. v. M.Y.*, 2010-839 (La. App. 3 Cir. 3/9/11); 58 So. 3d 612, 616.

[162] *King v. Bryant*, 2001–1379 (La. App. 3 Cir. 7/10/02); 822 So. 2d 214, 217.

[163] Rec. Doc. 48 at 32.

not rise to the level of extreme and outrageous.[164] The Court finds that Oliver fails to state a claim that her termination while on FMLA leave was extreme and outrageous. Oliver provides no authority to support a different conclusion. Rather, even if her termination was wrongful under the FMLA, Louisiana courts have consistently held that at-will employees may not rely on wrongful termination to support a claim for IIED.[165]  As previously addressed, Oliver has failed to allege any facts that could be construed as an exception to the default at-will status of an employee and so may not rely on her termination to state the IIED Claim.[166]

Oliver also relies on Movants' alleged false accusations and threats to sue her in response to the EEOC Charge to support the IIED Claim. Movants argue that these alleged "post-termination activities do not rise to an actionable level."[167] Movants cite *Greater New Orleans Fair Housing Action Center, Inc., v. Dopp*[168] ("*GNOFHAC*"), a case decided by another district judge in the Eastern District of Louisiana, to support this argument.[169] In *GNOFHAC*, the district court found that the defendant failed to state a counterclaim of IIED against plaintiff where the

---

[164] Rec. Doc. 51-1 at 12.

[165] *See White v. Allstate Ins. Co.*, No. 95-4234, 1996 WL 109300, at *3 (E.D. La. Mar. 12, 1996) (Vance J.) (citing *Stevenson v. Lavalco, Inc.,* 28,020 (La. App. 2 Cir. 2/28/96); 669 So. 2d 608, 612; *Hammond v. Med. Arts Grp., Inc.*, 89-881 (La. App 3 Cir. 2/6/91); 574 So. 2d 521, 525); *see also Tisdale v. Woman's Hosp.*, 191 F. App'x 255, 257 (5th Cir. 2006) (citing *Nicholas v. Allstate Ins. Co*., 1999-2522 (La. 8/31/00); 765 So. 2d 1017, 1022).

[166] Regardless, Movants' conduct does not rise to the level of extreme and outrageous under Louisiana law. *See Stewart v. Parish of Jefferson*, 95–407 (La. App. 5 Cir. 1/30/96), 668 So.2d 1292 (holding that intentional infliction of emotional distress was not shown, even though the supervisor harassed the employee for two years, leading the employee to accept a demotion which ultimately led to termination); *Pate v. Pontchartrain Partners, LLC*, No. 13–6366, 2014 WL 5810521, at 5* (E.D. La. Nov. 7, 2014) (holding that the termination of plaintiff's employment eight months into her pregnancy did not constitute extreme and outrageous conduct); *Mahl v. Nokia*, 212 F App'x 279, 280-81 (5th. Cir. 2006) (holding that employer's sending employee termination notice only days after Hurricane Katrina did not rise to level of extreme and outrageous conduct).

[167] Rec. Doc. 51-1 at 12.

[168] 13-6769, 2014 WL 1652514 (E.D. La. Apr. 23, 2014).

[169] Rec. Doc. 51-1 at 12.

defendant alleged that the plaintiff proposed settlement terms it knew the defendant could not pay, made unfounded allegations against the defendant that strained his marriage, and knew the defendant was mentally unstable.[170] The court in *GNOFHAC* relied on *Ulmer v. Frisard*, a case decided by the Louisiana Fifth Circuit Court of Appeal.[171] In *Ulmer*, the appellate court held that the cross-claimant defendant failed to state an IIED claim even though the plaintiff engaged in the pre-litigation tactic of threatening the defendant with continued litigation and financial ruin.[172] Oliver does not distinguish her claim from those in *GNOFHAC* and *Ulmer*. Like the defendants in those cases, Oliver relies on Movants' alleged false allegations and threats of litigation to support her IIED Claim.[173] However, such conduct is not sufficiently extreme and outrageous to support a claim for IIED.

Nevertheless, Oliver argues that the alleged conduct was sufficiently extreme and outrageous in this case because Stillufsen violated New York Disciplinary Rule 7-105(a) by "threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter."[174] However, the Court finds this argument unavailing because the Second Amended Complaint does not allege that Stillufsen threatened to present criminal charges, but rather "threatened to sue

---

[170] *GNOFHAC*, 2014 WL 1652514, at *1, 4*, *5; *DirecTV, Inc. v. Atwood*, No. 03–1457, 2003 WL 22765354 (E.D. La. Nov. 19, 2003) (Engelhardt, J.) (Filing suit "is embraced in this and most civilized communities. Thus, regardless of plaintiff's alleged motive – whether it be tortious, malicious, or even criminal – the alleged conduct itself simply does not rise to the level of extreme and outrageous.")).

[171] 97-5 (La. App. 5 Cir. 4/29/97); 694 So .2d 1046.

[172] *Id*. at 1047, 1049.

[173] *See* Rec. Doc. 58 at 40.

[174] *Id*. at 39–40.

her."[175] Thus, the Court finds that Oliver fails to plead that Movants' conduct met the high bar of "extreme and outrageous" sufficient to sustain an IIED Claim. Therefore, the IIED Claim against Movants must be dismissed.

**B.    *Dismissal of all Claims Against Stillufsen for Lack of Personal Jurisdiction***

Finally, Movants argue that Oliver's claims against Stillufsen must be dismissed for lack of personal jurisdiction.  For a court to exercise specific personal jurisdiction over a defendant, the defendant must engage in "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state."[176] The act must be "the defendant's own choice and not 'random, isolated, or fortuitous.'"[177] Furthermore, the plaintiff's claims in the lawsuit must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*."[178] In other words, "there must be 'an affiliation between the forum and the underlying controversy.'"[179] The Fifth Circuit evaluates these principles using a three-part test:

> First, to evaluate minimum contacts, we ask if the defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." Second, we ask if the case "arises out of or results from the defendant's forum-related contacts." Third, we ask if "the exercise of personal jurisdiction is fair and reasonable." If we answer all three questions in the affirmative, personal jurisdiction over the out-of-state defendant satisfies due process.[180]

---

[175] Rec. Doc. 48 at 16.

[176] *Ford Motor Co.*, 141 S. Ct. at 1024 (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 234, 253 (1958)).

[177] *Id.* at 1025 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).

[178] *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (alterations in original). (quoting *Daimler*, 571 U.S. at 127).

[179] *Id*. (quoting *Goodyear*, 564 U.S. at 919).

[180] *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels.*, 1 F.4th 346, 351 (5th Cir. 2021).

Regarding the first step, Movants assert that Stillufsen did not purposely direct his activities towards Louisiana nor purposefully avail himself of its privileges by allegedly being on the October 6, 2020 telephone call with Oliver, corresponding with Oliver's Louisiana-based counsel, or responding to the EEOC charge.[181] However, this argument is unavailing. "Critical" to establishing the first prong is showing that "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there."[182] "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[183] The Second Amended Complaint alleges multiple "specific contacts" between Stillufsen and Louisiana.[184] For example, Stillufsen allegedly engaged in the October 6, 2020 telephone call with Oliver, who worked and lived in Louisiana.[185] Furthermore, after Oliver's counsel, a Louisiana attorney, allegedly informed Roehm in writing that Oliver believed her rights had been violated, Stillufsen allegedly responded through another telephone call and a subsequent letter and "accused [Oliver] of 'stealing from Roehm and threatened to sue her if she pursued her

---

[181] *See* Rec. Doc. 51-1 at 6–7.

[182] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980); s*ee also Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (citing *World-Wide Volkswagen*, 444 U.S. at 297).

[183] *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001).

[184] *Gen. Retail Servs., Inc., v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794 (5th Cir. 2007) (holding that plaintiff submitted sufficient evidence to justify a Texas court's assertion of personal jurisdiction over a foreign corporate officer based on the single specific act of sending marketing materials and an Offering Circular to plaintiff in Texas).

[185] *See* Rec. Doc. 48 at 13–14; s*ee also Brown v. Flowers Inds., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982) (finding personal jurisdiction based on one long-distance telephone call).

claims."[186] Thus, Oliver alleges that Stillufsen directed his activities towards Louisiana through his interactions with Oliver.[187]

Furthermore, Stillufsen cannot argue that his alleged actions towards Oliver were not "purposeful" such that he could not have "reasonably anticipated being haled into Louisiana Court." As General Counsel for Roehm, Stillufsen admits to overseeing Roehm's compliance with federal employment laws and Roehm employs Louisiana citizens.[188] Additionally, Stillufsen knew, or reasonably should have known, that Oliver was a Louisiana employee given the participation of Brown, the Facility's site manager, in the decision to terminate Oliver. In other words, Stillufsen's alleged contact with Louisiana was by his "own choice and not 'random, isolated, or fortuitous.'"[189] Therefore, Stillufsen has purposefully availed himself of the privilege of conducting activities in the state of Louisiana.

Regarding the second step, the Court has already found that Oliver has properly stated an actionable claim against Stillufsen under the FMLA, and this claim arises from Oliver's alleged termination during the phone call in which Stillufsen participated. Regarding the third step, Movants only argue in a footnote "that subjecting the General Counsel of a multinational corporation to jurisdiction based only on his position with [Roehm] would no doubt offend [traditional notions of fair play and substantial justice]" such that this Court's exercise of personal jurisdiction over Stillufsen would be unreasonable.[190] However, as previously discussed, the

---

[186] Rec. Doc. 48 at 16.

[187] *See Brown*, 688 F.2d at 332.

[188] *See* Rec. Doc. 51-2 at 3.

[189] *Id.* at 1025 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

[190] Rec. Doc. 65 at 8 n.4. Movants fail to address any of the following factors that courts consider in assessing

Court's personal jurisdiction over Stillufsen in this matter is based on his alleged actions purposefully directed towards the state of Louisiana, not on his position with Roehm. Furthermore, the Court fails to see how it would be burdensome for Stillufsen, who has already participated in administrative hearings in the state by responding to Oliver's EEOC Charge, to litigate in Louisiana.[191] Therefore, the Court sees no reason why the exercise of personal jurisdiction over Stillufsen would be unreasonable. Thus, the Court finds that it has personal jurisdiction over Stillufsen.

## **V. Conclusion**

Oliver properly states the FMLA Claim against Movants and the Court has personal jurisdiction over Stillufsen. However, the Second Amended Complaint fails to state a claim for intentional interference with contract or IIED against Movants. Accordingly,

---

the reasonableness of exercising personal jurisdiction:

> (1) The burden upon the nonresident defendant to litigate in that forum; (2) the forum state's interests in the matter; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies.

*Stroman Realty*, 513 F.3d at 487.

[191] *See* Rec. Doc. 48 at 16–17.

**IT IS HEREBY ORDERED** that Movants' "Motion to Dismiss Second Amended Complaint"[192] is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** to the extent it seeks dismissal of the IIED Claim and Intentional Interference of Contract Claim against Movants. The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this ___ day of October, 2022.
20th

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[192] Rec. Doc. 51.

34