## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHELSEA OLIVER**                                              **CIVIL ACTION**

**VERSUS**                                                         **NO. 21-1831**

**ROEHM AMERICA, LLC et al.**                        **SECTION: "G"(4)**

## ORDER AND REASONS

This litigation arises from an alleged controversy over Defendant Roehm America, LLC's ("Roehm") termination of Plaintiff Chelsea Oliver ("Oliver").[1] Oliver brings claims against Roehm, Andrew Stillufsen ("Stillufsen"), Yolanda Brown ("Brown"), Chubb Insurance Company of New Jersey ("Chubb"), and Federal Insurance Company ("Federal") (collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] the Americans with Disabilities Act ("ADA"),[3] the Family and Medical Leave Act of 1993 ("FMLA"),[4] the Employee Retirement Income Security Act ("ERISA"),[5] and Louisiana law. Before the Court is Roehm's Motion to Dismiss the Second Amended Complaint.[6] In the motion, Roehm argues that Oliver's Second Amended Complaint[7] fails to state a claim against it and so all

---

[1] *See* Rec. Doc. 48.

[2] 42 U.S.C. § 2000e *et seq.*

[3] § 12101 *et seq.*

[4] 29 U.S.C. § 2601 *et seq.*

[5] § 1001 *et seq.*

[6] Rec. Doc. 50.

[7] Rec. Doc. 48.

1

claims against Roehm should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] Oliver opposes the motion.[9] Roehm replies in further support of the motion.[10]

Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part. The motion is granted to the extent that it seeks dismissal of any claim: (1) under the ADA or Title VII based on any alleged discrete employment action that occurred prior to September 1, 2020;  (2)  under the Louisiana Employment Discrimination Act ("LEDL") or Louisiana Human Rights Act ("LHRA") based on any alleged discrete employment action that occurred prior to June 28, 2020; (3) based on an alleged hostile work environment; (4) based on an alleged failure to accommodate under the ADA; (5) for compensatory and punitive damages for retaliation in violation of the ADA; (6) based on alleged discrimination and failure to accommodate under the LHRA; (7) under the Louisiana Unfair Trade Practice Act ("LUTPA"); and (8) for intentional infliction of emotional distress ("IIED"). The motion is denied in all other respects.

## I. Background

On October 5, 2021, Oliver filed a Complaint in this Court against Roehm, Brown, and Stillufsen.[11] On December 12, 2021, Oliver filed a First Amended Complaint.[12] On March 29, 2022, Oliver filed the instant Second Amended Complaint naming Chubb and Federal as additional

---

[8] Rec. Doc. 50.

[9] Rec. Doc. 58.

[10] Rec. Doc. 64.

[11] Rec. Doc. 1.

[12] Rec. Doc. 17.

defendants.[13] In the Second Amended Complaint, Oliver alleges that she was hired by Evonik Cyro, LLC ("Evonik") in March 2017 to work at a methacrylate production facility located at 10800 River Road, Westwego, Louisiana (the "Facility") as an administrative assistant and was one of only four female employees at the Facility.[14] Oliver avers that Roehm became the owner of the Facility in September 2019.[15] Oliver contends that, when she was hired, she was told "that [Evonik] had a tuition reimbursement policy;" however, upon beginning her employment, she was told that the policy only applied to management and, despite earning merit raises and bonuses, she was not granted tuition reimbursement nor promoted through June 2019.[16] In July 2019, Oliver alleges that she submitted another request for reimbursement and was told "that she was in fact eligible for tuition reimbursement."[17] Thus, "she submitted the necessary paperwork, and yet, never received any reimbursement."[18]

Oliver alleges that, after Roehm took over the Facility, new managers were hired and new policies were initiated, but the tuition reimbursement policy stayed the same; yet, the interim Plant Manager, Drew Scott ("Scott"), never granted her tuition reimbursement despite telling her she was eligible and that other male employees were receiving reimbursement.[19] Oliver avers that, although Scott ignored her requests for a raise, promotion, and tuition reimbursement through

---

[13] Rec. Doc. 48.

[14] *Id*. at 3, 5.

[15] *Id*. at 3.

[16] *Id*. at 5–6.

[17] *Id*. at 6.

[18] *Id*. Oliver alleges that she paid $17,063.56 in tuition during this time that should have been reimbursed. *Id*. at 7.

[19] *Id*.

January 2020, Scott encouraged male employees to take classes, offered them tuition reimbursement, waived educational requirements for promotion for one employee who declined to take classes, and gave a "spot bonus" to another who took classes but declined the reimbursement terms.[20]

Oliver contends that, in February 2020, Roehm hired Brown as a human resources manager and site manager of the Facility.[21] Oliver alleges that, in March 2020, Oliver requested and received approval for FMLA leave from March 3, 2020, until March 15, 2020, "for a knee surgery her physician suggested she undergo" due to chronic pain ( "First FMLA Leave").[22] Oliver avers that, after her First FMLA Leave, she worked from home based on Scott's instructions due to COVID-19 and her doctor's recommendation; however, she was removed from remotely-held meetings she had previously attended and was barred from working overtime despite previously working hundreds of overtime hours per year.[23]

Oliver alleges that, in August 2020, her doctor determined the knee surgery had failed and she required a second surgery. Therefore, she was granted FMLA leave from August 18, 2020, until August 30, 2020,[24] which was extended until October 30, 2020 ("Second FMLA Leave").[25] Oliver contends that, "[i]mmediately after she left for [her Second FMLA Leave], [] Brown started

---

[20] *Id*. at 7–8. Oliver alleges that, meanwhile "in 2020, a female contractor left because she felt she was subjected to a hostile work environment based on her gender." *Id*. at 7.

[21] *Id*. at 8.

[22] *Id*. at 9.

[23] *Id*. at 9–10.

[24] *Id*. at 11.

[25] *Id*. Oliver alleges that she utilized Roehm's group health benefits program and disability benefits during both her First FMLA Leave and Second FMLA Leave. *Id*. at 9, 11.

building up a case to terminate [her]" by "investigating her hours and timesheets."[26] Oliver avers that, on August 30, 2020, she submitted comments as part of her performance review requesting a promotion, never heard back from her supervisor, and was terminated on October 6, 2020, during a call from Brown, Stillufsen, as Roehm's General Counsel, and Roehm's Corporate Vice President of Human Resources.[27] During the phone call, Oliver alleges that Brown told her she should be at work based on Facebook photos Oliver had posted playing with her child and accused her of falsifying her FMLA leave, disability pay, and overtime requests.[28] Oliver contends that, from January 2020 to March 2020, she alerted Roehm that numerous male employees falsified their hours but these employees "were never disciplined."[29] Furthermore, Oliver asserts that a male employee on extended leave due to a shoulder and back injury "posted numerous photos on Facebook . . . [of him] enjoying time with his family, including traveling and carrying his grandchildren," but "was not terminated, investigated or disciplined in anyway."[30]

Oliver alleges that, after her termination, Stillufsen responded to her letter alleging Roehm had violated her legal rights by threatening to sue her for over $71,000 in approved overtime and

---

[26] *Id*. at 12.

[27] *Id.* at 12–13. Oliver alleges that, after she began her Second FMLA Leave, but prior to her termination, unbeknownst to her, her supervisor "posted several job positions for which [she] was qualified" and Brown informed Roehm's staff not to communicate with her during her leave. *Id*. at 12. Oliver alleges that, after she was terminated, Roehm hired a man to one of the new positions who had never taken FMLA leave. *Id*.

[28] *Id*. at 14. Oliver alleges that Brown and Stillufsen refused her request to "look at her notes" when they asked her about specific hours she worked on days in December 2019 and April 2020, threatened to make her repay wages to Roehm, and sent her a letter "claiming that even after her termination 'there is still an ongoing investigation' into her." *Id*.

[29] *Id*. at 15.

[30] *Id*.

short-term disability pay.[31] Oliver contends that, on June 28, 2021, she filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Roehm "alleging disability and gender discrimination, and retaliation" (the "EEOC Charge").[32] Oliver alleges that she was issued a notice of right to sue by the EEOC on December 21, 2021.[33] Oliver avers that she was replaced at Roehm by "a man who had not engaged in protected activity under federal or state law and did not have any disabilities."[34] Finally, Oliver asserts that Chubb and Federal "provided a contract of insurance to Roehm that is applicable to the claims asserted" in the Second Amended Complaint.[35]

In the Second Amended Complaint, Oliver brings ten claims against Roehm: (1) interference with and retaliation for Oliver's exercise of her FMLA rights ("FMLA Claim");[36] (2) disability discrimination and failure to accommodate Oliver's disability in violation of the ADA ("ADA Discrimination Claim");[37] (3) retaliation for Oliver's request for disability accommodation in violation of the ADA ("ADA Retaliation Claim");[38] (4) disability discrimination and failure to accommodate Oliver's disability in violation of the LEDL ("LEDL Disability Discrimination

---

[31] *Id*. at 16.

[32] *Id*. Oliver alleges that, in his response submitted to the EEOC, Stillufsen stated that Oliver's performance was below expectations, even though "her supervisors never provided this feedback during her employment" and threatened to sue her for $25,901 in overtime pay if she pursued her claims. *Id*. at 16–17.

[33] *Id*. at 4.

[34] *Id.* at 17.

[35] *Id*.

[36] *See id.* at 17–19.

[37] *Id*. at 19–21.

[38] *Id*. at 21–22.

Claim");[39] (5) gender discrimination in violation of Title VII ("Title VII Claim");[40] (6) gender discrimination in violation of the LEDL ("LEDL Gender Discrimination Claim");[41] (7) retaliation for opposing an unlawful practice under the LEDL in violation of the LHRA ("LHRA Retaliation Claim");[42] (8) retaliation for Oliver's use of an employee group health insurance and short-term disability policy in violation of ERISA ("ERISA Claim");[43] (9) use of unfair and deceptive trade practices by promising Oliver protected time off and then firing her "for receiving treatment for [her] knee injury before that time expired in violation of LUTPA ("LUTPA Claim");[44] and (10) and IIED for terminating Oliver after promising her protective leave to recover from her knee surgery and then repeatedly threatening to sue in violation of Louisiana law ("IIED Claim").[45]

On April 12, 2022, Roehm filed the instant "Motion to Dismiss for Failure to State a Claim."[46] On May 6, 2022, Oliver filed an opposition to the motion.[47] On May 13, 2022, Roehm filed a reply in further support of the motion.[48]

---

[39] *See* La. Rev. Stat. § 23:301 *et seq.*; Rec. Doc. 48 at 22–24.

[40] Rec. Doc. 48 at 25–26.

[41] *Id*. at 26–27.

[42] *See* La. Rev. Stat. § 23:661 *et seq.*; Rec. Doc. 48 at 28–29.

[43] Rec. Doc 48 at 29–30.

[44] *See* La. Rev. Stat. § 51:1401 *et seq.*; Rec. Doc. 48 at 31–32.

[45] Rec. Doc. 48 at 32–33.

[46] Rec. Doc. 50.

[47] Rec. Doc. 58.

[48] Rec. Doc. 64.

## II. Parties' Arguments

### A.   *Roehm's Arguments in Support of the Motion*

Roehm moves the Court to dismiss all claims pending against it.[49] The Court summarizes Roehm's arguments why each of Oliver's claims against it should be dismissed in turn. However, the Court first summarizes Roehm's ancillary arguments that Oliver's claims are prescribed in part and that Oliver fails to state any claim based on a hostile work environment or failure to promote.

#### 1.   Prescription

Roehm argues that Oliver's claims asserted under the ADA, Title VII, LEDL, and LHRA are time-barred in part because Oliver "did not file a charge of discrimination with the [EEOC] until June 28, 2021."[50] Thus, Roehm avers that Oliver's claims brought pursuant to the LEDL and LHRA are prescribed to the extent that they are based on employment actions before June 28, 2020, given the one-year prescriptive period for bringing claims under those state statutes.[51] Roehm also contends that Oliver's claims brought pursuant to the ADA and Title VII are time-barred to the extent that they are based on employment actions before September 1, 2020, given the 300 day prescriptive period for bringing claims under those federal statutes.[52]

#### 2.   Hostile Work Environment

Roehm argues that any claim of hostile work environment under the FMLA, Title VII, the LEDL, the LHRA, or ERISA should be dismissed.[53] Roehm avers that there is no case law to

---

[49] Rec. Doc. 50 at 1.

[50] Rec. Doc. 50-1  at 4.

[51] *Id*. at 5.

[52] *Id.* at 4 (citing 42 U.S.C. § 12117(a)).

[53] *See id.* at 21.

support a hostile work environment claim under ERISA, especially given that the Fifth Circuit has found that one cannot continually violate the statute.[54]  Roehm also asserts that Oliver "has failed to allege any conduct that could conceivably state a hostile work environment claim" based on Oliver's use of ERISA-covered benefits, taking leave, or her disability.[55]  Finally, Roehm contends that Oliver "fails to allege that she was the subject of any harassment" by Roehm's employees, who were instructed not to contact her while she worked from home.[56]  Thus, Roehm concludes that Oliver fails to state a hostile work environment claim under any statute.[57]

### 3.    Failure to Promote

Roehm also argues that Oliver fails to state a claim based on Roehm's failure to promote her because "she never alleges that she applied for a particular position, much less that she was qualified for that position, or that a male outside of her protected class was selected."[58] Therefore, Roehm asserts that, "to the extent she intended to allege a failure to promote claim, it too fails as a matter of law."[59] Thus, Roehm concludes that Oliver cannot state a claim under any statute based on Roehm's failure to promote her.

### 4.    FMLA Claim

Roehm argues that the Second Amended Complaint fails to state an FMLA claim because "[t]he timeline of events simply does not support . . . that [Oliver's] FMLA activity had anything

---

[54] *Id.* at 21–22.

[55] *Id.* at 22–23.

[56] *Id.* at 23.

[57] *Id.*

[58] *Id.* at 24 (citing *Rutherford v. Harris Cnty., Tex.,* 197 F.3d 173, 179 (5th Cir. 1999)).

[59] *Id.*

to do with the decision to terminate her."[60] Roehm avers that Oliver "makes no allegations as to other employees who requested FMLA leave receiving more favorable treatment, so her theory of liability [] must rest on a causal relationship between [her] request for (and use of) leave and her termination."[61] Roehm asserts that Oliver has failed to establish such a causal relationship because the real reason for her termination, as alleged in the Second Amended Complaint, was "her overtime abuse and the fact that she did not suffer from a serious health condition to begin with."[62] Roehm further contends that it had already allowed Oliver to use eight of her twelve weeks of allotted leave under the FMLA and so "[i]t is utterly implausible" that a request of four additional weeks would have caused Roehm to terminate Oliver's employment.[63] Therefore, Roehm concludes that Oliver's FMLA Claim against it should be dismissed.[64]

### 5.    ADA Discrimination Claim and LEDL Disability Discrimination Claim

Roehm makes three arguments why the ADA Discrimination Claim and the LEDL Disability Discrimination Claim should be dismissed.[65] First, Roehm avers that any claim against it for failing to provide Oliver with a reasonable accommodation is barred by not presenting such a claim to the EEOC first, given that a reasonable accommodation claim is distinct from a disparate

---

[60] *Id.* at 6.

[61] *Id.* at 7.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] Roehm argues that ADA legal analysis applies to analogous provisions in the LEDL. Rec. Doc. 50-1 at 9 (citing *Credeur v. Louisiana*, 860 F.3d 785, 791 n.3 (5th Cir. 2016); *Sutherland v. Edison Chouest Offshore, Inc.*, No. 19-414, 2020 WL 5436654, at *1 (E.D. La. Sept. 10, 2020)).

treatment claim.[66] Roehm concludes that, because the EEOC Charge did not include a claim for failure to accommodate, Oliver cannot proceed on such a claim now.[67]

Second, Roehm argues that the Second Amended Complaint fails to state a claim under the ADA or LEDL for failure to accommodate because Oliver "was not disabled within the meaning of the ADA" and because "a request for FMLA leave is not a request for reasonable accommodation under the ADA."[68] Roehm also avers that Oliver fails to state such a claim because she was allowed to work from home and "she cannot now claim she was entitled to an accommodation over and above the ability to work from home."[69]

Third, Roehm argues that the Second Amended Complaint fails to state a claim under the ADA or LEDL for disability discrimination because Oliver "is not, and was not, disabled" under the ADA.[70] Roehm avers that Oliver cannot establish that she is or was disabled under the ADA "simply by establishing a physical impairment, without more," given that the physical impairment must be "substantially limiting" to qualify, and "[i]t is clear under the ADA that not all physical limitations are substantial."[71] Roehm asserts that Oliver's knee issues were "only a temporary physical impairment" and she "has admitted she could stand and play putt-putt golf after her knee procedure(s)"; therefore, she "cannot claim that this purported impairment substantially limited

---

[66] *Id.* at 5–6 (citing *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 n.4 (5th Cir. 2006); *Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 570 (5th Cir. 2012)).

[67] *Id.* at 6 (citing Rec. Doc. 50-2).

[68] *Id.* at 8 (quoting *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017)).

[69] *Id.* at 9.

[70] *Id.*

[71] *Id.* at 10 (citing *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 652, 758 (5th Cir. 1996)).

her ability to walk, much less stand."[72] Roehm also contends that standing and walking were not required job functions for her position, as demonstrated by her ability to work from home, and so the condition did not impair her ability to do her job as required by the ADA.[73] Therefore, Roehm concludes that Plaintiff cannot claim disability discrimination.[74]

### 6.    ADA Retaliation Claim

Roehm advances two arguments why the ADA Retaliation Claim should be dismissed. First, Roehm avers that Oliver's claim for compensatory or punitive damages should be dismissed because "relief under the ADA's anti-retaliation provision is limited to equitable remedies."[75] Second, Roehm asserts that, under the ADA, Oliver never "engaged in a protected activity because she never requested an accommodation, only FMLA leave" and "they are not the same thing."[76] Therefore, Roehm asks the Court to dismiss the ADA Retaliation Claim.[77]

### 7.    LHRA Retaliation Claim

Roehm advances two arguments why the LHRA Retaliation Claim should be dismissed. Roehm avers that any LHRA claim against it for failing to provide Oliver with a reasonable accommodation is barred by not presenting such a claim to the EEOC first.[78] Roehm also asserts

---

[72] *Id*. at 11.

[73] *Id*.

[74] *Id*.

[75] *Id*. (citing *Rizzo v. Blues Mgm't, Inc.,* 4:16-CV-01017, 2017 WL 549016, at *3-4 (S.D. Tex. Jan 24, 2017)).

[76] *Id*. at 12 (citing *Acker*, 853 F.3d at 791).

[77] *See id.* at 24.

[78] *See id*.

that the LHRA Claim should be dismissed to the extent that it asserts a discrimination claim because the LHRA "no longer applies to unlawful discrimination."[79]

### 8. Title VII Claim and LEDL Gender Discrimination Claim

Roehm argues that the Title VII Claim and LEDL Gender Discrimination Claim should be dismissed because Oliver "never alleges any similarly situated male administrative assistants exist at all," let alone were treated more favorably, as required by the statute.[80] Therefore, Roehm asks the Court to dismiss the Title VII Claim and LEDL Gender Discrimination Claim.[81]

### 9. ERISA Claim

Roehm advances two arguments as to why the ERISA Claim should be dismissed. First, Roehm argues that the ERISA Claim should be dismissed for failure to state a claim because the Second Amended Complaint "says nothing about any evidence that could give rise to the inference that any actions taken by Roehm had anything to do with any ERISA-covered benefit to which [Oliver] was entitled."[82] Rather, Roehm asserts that Oliver makes only the "conclusory allegation" that Roehm retaliated against her for exercising her rights and to prevent her from obtaining ERISA benefits.[83]

---

[79] *Id.* at 13 (quoting *Montgomery-Smith v. Louisiana Dep't of Health and Hosps.*, 299 F.Supp.3d 790, 809 (E.D. La. 2018).

[80] *Id.* at 13–14. Roehm argues that the Second Amended Complaint only references "male employees who worked mixing chemicals" and seems to allege that they should be "considered similarly situated to her office/clerical position." *Id.* at 14. Roehm argues that the LEDL Gender Discrimination Claim is subject to the same standard as the Title VII Claim "[b]ecause the LEDL is 'substantively similar' to Title VII, and Louisiana courts routinely look to the federal law for guidance." *Id.* at 13–14 (quoting *Jones v. City of Monroe*, No. 3:19-00832, 2019 WL 5488603, at *11 (W.D. La. Oct. 8, 2019)).

[81] *See id.* at 24.

[82] *Id.* at 14.

[83] *Id.*

Second, Roehm argues that Oliver's ERISA Claim requires "a specific intent to discriminate" but that Oliver "has failed to sufficiently allege any such intent."[84] Roehm asserts that, rather, its benefits plan paid for two surgeries and twice paid her short-term disability benefits, and the Company granted her multiple FMLA leaves.[85] Roehm contends that Oliver "never discussed the possibility of further treatment with Roehm personnel" and "the vast majority of benefits had already been distributed."[86] Roehm also asserts that it permitted many employees to take leave and receive disability benefits.[87] Thus, Roehm concludes that it "had no motivation, much less intent, to prevent [Oliver] from receiving any speculative benefits in the future," and displayed no discriminatory animus towards her for using benefits in the past, and so the ERISA Claim should be dismissed.[88]

### 10.    LUTPA Claim

Roehm argues that the LUTPA Claim should be dismissed because Oliver "fails to allege that [Roehm's] conduct violated any purpose of the LUTPA—protecting consumers, fostering competition, curbing business practices that lead to a monopoly and unfair restraints of trade within a certain industry, or protecting the ability of employees to change in employment."[89] Roehm also avers that LUTPA is governed by a one-year prescriptive period and so "any act alleged to have

---

[84] *Id*. at 15 (citing *Matassarin v. Lynch*, 174 F.3d 549, 569 (5th Cir. 1999)).

[85] *Id*. at 15–16.

[86] *Id*. at 16 (emphasis omitted).

[87] *Id*.

[88] *Id*.

[89] *Id*. at 18 (quoting *Oncale v. CASA of Terrebonne Par., Inc.*, No. CV 19-14760, 2020 WL 3469838, at *19 (E.D. La. June 25, 2020)).

occurred prior to October 5, 2020, is time-barred."[90] Thus, Roehm asks the Court to dismiss the LUTPA Claim.[91]

### 11.    IIED Claim

Roehm argues that the IIED Claim should be dismissed because the alleged conduct does not rise to the high threshold necessary to sustain an emotional distress claim under Louisiana law.[92] Roehm avers that its termination of Oliver's employment "was utterly reasonable in light of [Oliver's] conduct."[93] Roehm also asserts that its correspondence with Oliver's counsel post-termination denying Oliver's allegations and threatening to pursue claims against her was its right and an action that does not rise to level necessary to assert a claim of intentional infliction of emotional distress.[94] Therefore, Roehm concludes that the IIED Claim should be dismissed.[95] For these reasons, "Roehm asks the Court to dismiss all claims against it with prejudice."[96]

### B.    *Oliver's Arguments in Opposition to the Motion*

In opposition, Oliver argues that the Court should not dismiss her claims against Roehm.[97] The Court summarizes Oliver's arguments in opposition to dismissing each claim in turn.

---

[90] *Id*. at 17.

[91] *Id*. at 18.

[92] *Id*. at 18–19 (citing *Bordelon v. Wells Fargo Fin. La., LLC¸* No. 18-2563, 2018 WL 3587690, at *7 (E.D. La. July 26, 2018)).

[93] *Id*. at 20.

[94] *Id*. at 20–21 (citing *Bordelon*, 2018 WL 3587690; *Greater New Orleans Fair Hous. Action Ctr., Inc. v. Dopp*, No. 13-6769, 2014 WL 1652514 (E.D. La. Apr. 23, 2014); *DirecTV, Inc. v. Atwood,* No. 03-1457, 2003 WL 22765354 (E.D. La. Nov. 19, 2003)).

[95] *Id*. at 21.

[96] *Id*. at 24.

[97] Rec. Doc. 58 at 1.

### 1.     Prescription

Oliver refutes Roehm's assertion that her claims are time-barred in part by arguing that she was subject to a hostile work environment, a claim that is not time-barred under the continuing violations doctrine.[98] Oliver also contends that Roehm's continued failure to promote her and deny her overtime occurred both before and after the running of the prescriptive period such that these actions were part of a series of related acts which are not time-barred under the continuing violations doctrine.[99] Finally, Oliver argues that Roehm's terminating her and threatening to sue her occurred before the prescriptive period ran.[100]

### 2.     Hostile Work Environment

Oliver argues that the Second Amended Complaint states a hostile work environment claim because it alleges that Roehm ostracized her by excluding her from team meetings, blocking her access to the company's intranet, and instructing "her co-workers not to speak to her for any reason" during her FMLA leaves.[101] Oliver asserts that "Courts have found that similar misconduct is sufficient to constitute retaliation."[102]

### 3.     Failure to Promote

Oliver contends that the Second Amended Complaint states a claim for failure to promote because she alleges that she asked for a promotion in August 2020 and that a position well-suited to her became available while she was on FMLA leave but that Roehm hired a man who had never

---

[98] *Id.* at 20.

[99] *Id.* at 20–21.

[100] *Id.* at 21.

[101] *Id.* at 8–9 (citing Rec. Doc. 48 at 9–10, 12–13).

[102] *Id.* at 9 (citing *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 262 (5th Cir. 2014)).

taken FMLA leave to the position instead.[103] Oliver avers that her failure to actually apply for the position does not impede her ability to pursue a failure to promote claim because doing so would have been futile.[104]

### 4.     FMLA Claim

Oliver asserts that she makes two FMLA claims: (1) interference, denial, and restraint of her ability to utilize FMLA time, and (2) discrimination and retaliation.[105] First, Oliver argues that "Roehm provides no argument in support of its request for the dismissal of [her] claim that Roehm restrained or interfered with her right to continue taking FMLA leave when it fired her while she was on FMLA leave."[106]

Second, Oliver argues she properly pled an FMLA retaliation claim.[107] Oliver avers she was entitled to FMLA leave and so was protected under the statute.[108] Oliver also asserts that she specifically pled that "Roehm subjected her to several adverse employment actions in retaliation for engaging in protected activity under the FMLA by subjecting her to hostile work environment, not promoting her, preventing her from working overtime, terminating her and threatening to sue her.[109] Oliver further contends that a hostile work environment claim under the FMLA should be

---

[103] *Id*. at 6–7 (citing Rec. Doc. 48 at 12–13). Oliver further argues that Roehm prevented her from seeing the posting by revoking her access to the company's intranet while she was on FMLA leave. *Id*. at 7.

[104] *Id*. at 7 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366–67 (1977)).

[105] *See id.* at 4–5.

[106] *Id*. at 5.

[107] *Id*.

[108] *Id*.

[109] *Id*.

recognized given the Fifth Circuit's recognition that a hostile work environment claim exists under the ADA and Title VII.[110]

Finally, Oliver argues that the third prong is satisfied for two reasons. First, Oliver asserts that she "sufficiently pled that she was treated worse than other employees who did not request FMLA leave."[111] Oliver avers that she was disciplined more severely than male employees who did not request FMLA leave, even though those men attempted to defraud the company.[112] Oliver also contends that she was replaced by someone who had not sought FMLA leave.[113]

Second, Oliver argues that she pled that adverse employment decisions were made against her due to her taking FMLA leave by alleging that she requested the Second FMLA Leave on August 27, 2020, and was fired on October 6, 2020, while still on leave.[114] Oliver also asserts that Stillufsen's comments accusing her of stealing short-term disability benefits and overtime wages, and his threatening to sue her if she filed a claim, suggest that her taking FMLA leave caused her termination.[115] Finally, Oliver contends that Roehm's justifications for her termination were pretextual because her overtime was approved, there is no evidence that she lied about her need

---

[110] *Id*. at 8.

[111] *Id*.

[112] *Id*. (citing Rec. Doc. 48 at 14–15).

[113] *Id*. (citing Rec. Doc. 48 at 17, 19).

[114] *Id*. at 10. Oliver argues that close temporal proximity is sufficient to establish such causation. *Id*.

[115] *Id*.

for FMLA leave, and her performance was only criticized after she filed her EEOC charge.[116] Therefore, Oliver concludes that the FMLA Claim should not be dismissed.[117]

### 5.    ADA Discrimination Claim and LEDL Disability Discrimination Claim

Oliver argues that the ADA Discrimination Claim and LEDL Disability Discrimination Claim should not be dismissed because she properly claims that (1) Roehm discriminated against her based on her disability and (2) failed to accommodate her disability.[118]

Oliver makes three arguments why she states a claim disability discrimination.[119] First, Oliver argues that she is disabled under the ADA because she "suffered physical impairments in her knee and hip" that "substantially limited major life functions" such as standing, walking long distances, climbing stairs, or exercising.[120] Oliver avers that her condition required her to undergo two surgeries as "her conditions were 'so severe' that 'she could not safely drive, climb, crawl, or stand for long periods.'"[121] Oliver contends that, contrary to Roehm's assertion, her condition can qualify as a disability even if it was temporary and did not render her unable to work because it affected major life activities.[122] Oliver further argues that Roehm regarded her as disabled given

---

[116] *Id.* at 11.

[117] *See id.* at 1.

[118] *See id.* at 11. Oliver agrees with Roehm that the LEDL Disability Discrimination Claim is subject to the ADA standard. *Id.* at 12.

[119] *See id.* at 11–12.

[120] *Id.* at 15 (citing Rec. Doc. 48 at 8–9). Oliver argues that her meniscal tear in her right knee caused "atrophy in that leg, derangement in [her] medial meniscus, a labral tear in her right hip, and pain in her lower back. *Id.*

[121] *Id.* at 15–16 (citing Rec. Doc. 48 at 10).

[122] *Id.* at 16 n.93, n.96 (citing *Harrison v. Soave Enters. L.L.C.*, 826 F. App'x 517, 523 (6th Cir. 2020).

her use of Roehm's employee group benefits.[123] Finally, Oliver asserts that her use of FMLA leave and employee group benefits, and her documentation from her doctors, provide a record of her disability.[124]

Second, Oliver argues that Roehm admits she was qualified and able to perform the essential functions of her job.[125] Third, Oliver argues that Roehm does not contest that she pled adverse employment actions based on Roehm's subjecting her to a hostile work environment, refusing to reimburse her tuition, denying her overtime and raises, and threatening to sue her.[126] Oliver avers that the Fifth Circuit has recognized hostile work environment claims under the ADA.[127] Oliver also argues that Roehm does not dispute that the adverse employment were caused by her disability.[128] Finally, Oliver avers that the LEDL Disability Discrimination Claim and ADA Discrimination Claim are not time-barred under the continuing violation doctrine given the hostile work environment to which she was subjected.[129]

Next, Oliver makes three arguments that she properly states a claim that Roehm failed to accommodate her disability in violation of the LEDL and ADA.[130] First, Oliver reasserts her

---

[123] *Id*. at 17 (citing Rec. Doc. 48 at 8–9, 11–12).

[124] *Id*. at 18 (citing Rec. Doc. 48 at 8–12).

[125] *Id*. at 19 (citing Rec. Doc. 50-1 at 11 ("Plaintiff has not alleged that standing or walking were required job functions of her administrative assistant position. This is because they were not; Plaintiff worked from home from March 2020 until her termination in October 2020.")).

[126] *Id*.

[127] *Id*. at 20.

[128] *Id*. at 21.

[129] *Id*. at 20–21 (citing *Henson v. Bell Helicopter Textron, Inc.,* 128 F.App'x 387, 391 (5th Cir. 2005) (per curiam) (citing *Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002)).

[130] *Id*. at 21.

arguments that she is a qualified with a disability known by the employer.[131] Second, Oliver refutes Roehm's assertion that she was given the reasonable accommodation of working from home and asserts that she also requested the reasonable accommodation of continued job protection during her Second FMLA Leave.[132] Oliver avers that, instead, Roehm terminated her employment during her Second FMLA Leave without discussing potential accommodations with her.[133]

Third, Oliver argues that she properly presented her claim that Roehm failed to accommodate her in her EEOC Charge.[134] Oliver asserts that she explicitly referenced in the EEOC Charge that she was terminated while on her second FMLA Leave and "Roehm specifically addressed the failure to accommodate claim" in response.[135] Therefore, Oliver concludes that she properly asserts claims for failure to accommodate and disability discrimination under the ADA and LEDL.[136]

### 6.   ADA Retaliation Claim

Oliver makes five arguments why the ADA Retaliation Claim should not be dismissed. First, Oliver argues that the ADA Retaliation Claim should not be dismissed because a request for an accommodation such as FMLA leave is a protected activity even if FMLA leave is not a reasonable accommodation.[137] Second, Oliver asserts that Roehm ignores Oliver's other requested

---

[131] *Id.*

[132] *Id.* at 21–22.

[133] *Id.* at 22.

[134] *See id.*

[135] *Id.* at 23 (citing Rec. Doc. 50-2 at 6; Rec. Doc. 51-5 at 4–5).

[136] *See id.* at 1.

[137] *Id.* at 24–25.

reasonable accommodations, such as her asking to work from home.[138] Third, Oliver reasserts her arguments that she was subjected to adverse employment actions.[139] Fourth, Oliver avers that Roehm does not argue that a causal connection between her requests for accommodation and the adverse employment actions exists.[140] Fifth, Oliver contends that she may recover compensatory and punitive damages under the ADA because neither the Supreme Court nor the Fifth Circuit has ruled on the availability of compensatory and punitive damages and a circuit split exists on the issue.[141]

### 7.   LHRA Retaliation Claim

Oliver makes two arguments why the LHRA Retaliation Claim should not be dismissed. First, Oliver applies the same standard to the LHRA Retaliation Claim as to the ADA Retaliation Claim.[142] Second, Oliver agrees with Roehm "that all state law discrimination claims are properly pled under the LEDL" and thus the LHRA Retaliation Claim is "limited only to claims for retaliation."[143]

### 8.   Title VII Claim and LEDL Gender Discrimination Claim

Oliver makes three arguments why the Title VII Claim and LEDL Gender Discrimination Claim should not be dismissed.[144] First, Oliver contends that Roehm does not contest that, as a

---

[138] *Id*. at 25.

[139] *Id*. at 25–26.

[140] Id. at 26.

[141] *Id*.

[142] *Id*. at 24.

[143] *Id*. at 33.

[144] *Id*. at 30. Oliver agrees with Roehm that the LEDL Gender Discrimination Claim is subject to the same standard as the Title VII Claim. *See id*.

woman, she is a member of a protected class, nor that she was qualified for her position.[145] Second, Oliver reasserts her arguments that she was subjected to adverse employment actions and that her claims are not time-barred.[146]

Third, Oliver argues that she was replaced by a man and that she was treated worse than similarly situated male employees.[147] She asserts that she was treated worse than situation male employees because, unlike her, male employees under her same supervisor were offered tuition reimbursement and promotion, not disciplined for lying about hours worked, and not terminated for posting photographs on Facebook enjoying time with family after surgery.[148] Therefore, Oliver concludes that her claims of gender discrimination should not be dismissed.[149]

### 9.    ERISA Claim

Oliver makes two arguments why the ERISA Claim should not be dismissed.[150] First, Oliver reasserts her arguments that she was subjected to adverse employment actions and asserts that she explicitly pled those actions as part of the ERISA Claim in the Second Amended Complaint.[151] Oliver further contends that, in *West v. Butler,*[152] the Sixth Circuit found that a

---

[145] *Id*. at 31.

[146] *Id*.

[147] Rec. Doc. 58 at 32–33 (citing Rec. Doc. 48 at 13, 15).

[148] *Id*. (citing Rec. Doc. 48 at 15).

[149] *Id*. at 33.

[150] *Id*. at 27 (quoting *Bodine v. Emp'rs Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003)).

[151] *Id*.

[152] 621 F.2d 240, 245–46 (6th Cir. 1980).

hostile work environment claim exists under ERISA to constitute an adverse employment action.[153]

Second, Oliver argues that the circumstantial evidence alleged in the Second Amended Complaint is sufficient to show Roehm's intent to interfere with her attainment of group health benefits.[154] Oliver avers that the close temporal proximity between her termination, her receipt of short-term disability benefits, and her second surgery is sufficient to show such intent under Fifth Circuit precedent.[155] Oliver also contends that such intent is alleged because Roehm knew about her increasing benefits and declining health, handled her termination suspiciously, and treated her differently than other employees.[156] Thus, Oliver concludes that the ERISA Claim should not be dismissed.[157]

### 10.  LUTPA Claim

Oliver argues that the LUTPA Claim should not be dismissed because "Louisiana federal courts, applying Louisiana law, have found employee LUTPA claims identical to [Oliver's] viable."[158] Oliver avers that Roehm's promising her protected time off and then firing her before that time expired violated LUTPA because doing so was "unethical, oppressive, unscrupulous, [and] substantially injurious."[159] Oliver asserts that Roehm's approval of her overtime hours, only

---

[153] Rec. Doc. 58 at 28.

[154] *Id*.

[155] *Id*. at 28–29 (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1479 (5th Cir. 1992)).

[156] *See id*. at 29–30 (citing Rec. Doc. 48 at 1, 16–17).

[157] *See id*. at 1.

[158] *Id*. at 34.

[159] *Id*. at 35 (quoting *Tripp v. Pickens*, No. 17-0542, 2019 WL 1966132, at *6 (W.D. La. May 1, 2019)).

to later accuse her of theft, terminate her, and threaten  to sue her, despite not investigating similar accusations against other employees, was likewise in violation of the Statute.[160] Finally, Oliver contends that the LUTPA Claim is not prescribed based on the continuing tort doctrine.[161] Therefore, Oliver concludes that the LUTPA Claim should not be dismissed.[162]

### 11.    IIED Claim

Oliver argues that the IIED Claim should not be dismissed because this is not a "run of the mill discrimination and harassment employment dispute," but a case where "Defendants took intentional and active steps to retaliate, terminate, and intimidate [Oliver] to not pursue her legal claims."[163] Oliver refutes Roehm's argument that its conduct of threatening to pursue claims against her was not extreme or outrageous by asserting that the cases on which Roehm relies are either Title VII cases not helpful to a Louisiana tort law claim or did not involve "parties who had a pre-existing relationship as employee-employer, . . . where [the] employer used [its] substantial resources to intimate a current employee dependent on the employer to protect her position."[164] Oliver also avers Roehm's outrageous conduct included investigating and terminating her, not just threatening to sue her if she filed an EEOC charge.[165] Finally, Oliver contends that Stillufsen's threat was also outrageous given that it violated Disciplinary Rule 7-105(a) that a New York

---

[160] *Id*.

[161] *Id*. at 36–37.

[162] *See id.* at 1.

[163] *Id*. at 37.

[164] *Id*. at 38–39.

[165] *Id*. at 39.

lawyer may not threaten criminal charges to gain an advantage in civil matter.[166] Therefore, Oliver concludes that the IIED Claim should not be dismissed.[167] Thus, Oliver asks the Court to deny Roehm's motion or grant her leave to amend her complaint.[168]

## C.    *Roehm's Arguments in Further Support of the Motion*

In reply, Roehm makes seven arguments. First, Roehm argues that the Fifth Circuit has "clarified that discrete acts 'are not actionable if time-barred, even when they are related to acts complained of in timely filed charges,' because 'they do not qualify under the continuing violation exception.'"[169] Second, Roehm reasserts its arguments why Oliver cannot make a reasonable accommodation claim and refutes that the EEOC Charge contained such a claim.[170] Third, Roehm reasserts that Oliver cannot recover compensatory or punitive damages under the ADA Retaliation Claim and refutes Oliver's argument that there is a circuit split on the issue.[171]

Fourth, Roehm argues that that the Second Amended Complaint fails to allege discrimination or retaliation sufficient to sustain the FMLA Claim, the ADA Discrimination Claim, the ADA Retaliation Claim, or the ERISA Claim.[172] Roehm avers that Oliver does not sufficiently allege discrimination based on the lack of tuition reimbursement, raises, or promotions, because the complaint makes naked assertions that she was investigated after taking her Second

---

[166] *Id*. at 39–40.

[167] *Id*. at 40.

[168] *Id*. at 41.

[169] Rec. Doc. 64 at 1–2 (quoting *Henson*, 128 F. App'x at 391)).

[170] *Id*. at 2–3.

[171] *Id*. at 3–4.

[172] *See id.* at 4.

FMLA Leave, Oliver had been complaining about not receiving tuition reimbursement, raises, or promotions since before Roehm took over the Facility, her claims are based exclusively on the "general allegation" that her duties exceeded her position, and the Second Amended Complaint does not provide any similarly situated comparators.[173] Roehm further contends that Oliver does not sufficiently allege a hostile work environment claim based on Roehm's refusal to grant tuition reimbursement, promote her, grant overtime, and provide raises because these are "discrete actions . . . many of which are time-barred, as well as factually unsupported."[174]

Fifth, Roehm reasserts its arguments why the Title VII Claim, LEDL Gender Discrimination Claim, LEDL Disability Discrimination Claim, and the LHRA Retaliation Claim should be dismissed.[175] Sixth, Roehm argues that the LUTPA Claim should be dismissed because, like in *Oncale v. CASA of Terrebone Parish, Inc.*,[176] the claim is based on the termination of an employment relationship rather than a contractual relationship.[177] Seventh, Roehm argues that the IIED Claim should be dismissed because a personnel decision does not rise to the level of intentional discrimination of emotional distress and pre-litigation conduct is not actionable.[178] Therefore, Roehm concludes that the Court should grant the motion to dismiss.[179]

---

[173] *Id*. at 5–6.

[174] *Id*. at 7.

[175] *See id.* at 8.

[176] 2020 WL 3469838.

[177] Rec. Doc. 64 at 8.

[178] *Id*. at 9–10 (quoting *Kell v. Iberville Bank*, 352 F.Supp.3d 650, 664 (E.D. La. 2018)).

[179] *Id*.

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[180] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[181] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[182] "Factual allegations must be enough to raise a right to relief above the speculative level."[183] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[184]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[185] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[186] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[187] Similarly, "[t]hreadbare recitals of the prongs of a cause of action, supported by mere conclusory

---

[180] Fed. R. Civ. P. 12(b)(6).

[181] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[182] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[183] *Twombly*, 550 U.S. at 555.

[184] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[185] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[186] *Iqbal*, 556 U.S. at 678–79.

[187] *Id.* at 679.

statements" will not suffice.[188] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the prongs of a cause of action.[189] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[190] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each prong of the asserted claims.[191] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[192]

## IV. Analysis

Roehm argues that the Second Amended Complaint should be dismissed in its entirety because Oliver's factual allegations fail to state a claim upon which relief can be granted.[193] Defendant seeks dismissal of Oliver's FMLA Claim, ADA Discrimination Claim, LEDL Disability Discrimination Claim, ADA Retaliation Claim, LHRA Retaliation Claim, Title VII Claim, LEDL Gender Discrimination Claim, ERISA Claim, LUTPA Claim, and IIED Claim.[194] Oliver opposes the motion and argues that none of her claims should be dismissed.[195] Roehm

---

[188] *Id.* at 678.

[189] *Id.*

[190] *Id.*

[191] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[192] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[193] Rec. Doc. 50 at 1.

[194] *Id.*

[195] Rec. Doc. 58. at 1–2.

replies in further support of the motion.[196] The Court addresses each claim in turn. However, the Court first addresses Roehm's arguments that Oliver's claims under the ADA, Title VII, LEDL, and LHRA are time-barred in part, and that Oliver fails to state a claim for hostile work environment or failure to promote.

### A.   *Oliver's Title VII, ADA, LEDL, and LHRA Claims are Partially Time-Barred*

Roehm argues that Oliver's claims under Title VII and the ADA are time-barred to the extent that they are based on discrete employment actions that occurred more than 300 days before she filed the EEOC Charge.[197] Roehm also argues that Oliver's claims under the LEDL and LHRA are prescribed to the extent that they are based on discrete employment actions that occurred a year or more before she filed the EEOC Charge.[198] Oliver argues that her claims are not prescribed under the continuing violation doctrine.[199]

Under Title VII and the ADA, before filing a civil action, a plaintiff "must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC within 300 days after the alleged violations occurred."[200] Under the LEDL and LHRA, this prescriptive period is one year.[201] Oliver filed a charge with the EEOC on June 28, 2021,[202] and so alleged violations of Title VII and the ADA that occurred before September 1, 2020, and alleged violations

---

[196] Rec. Doc. 64.

[197] Rec. Doc. 50-1 at 4.

[198] *Id*. at 5.

[199] Rec. Doc. 58 at 20, 26, 31.

[200] *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 390 (5th Cir. 2005).

[201] *See* La. Rev. Stat. § 23:303(D); *Johnson v. Harrah's Entm't, Inc.*, No. 04-331, 2005 WL 3541139, at *5 (E.D. La. Nov. 16, 2005).

[202] Rec. Doc. 48 at 4.

of the LEDL and the LHRA that occurred before June 28, 2020, are time-barred. However, Oliver argues that her claims are timely under the continuing violation exception to the statutes of limitation.[203]

The continuing violation doctrine may apply "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts."[204] The continuing violation doctrine "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period."[205] "The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights."[206] The Fifth Circuit has instructed that:

> [a]lthough there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.[207]

In *Berry v. Bd. of Supervisors of L.S.U.*, the Fifth Circuit first recognized the continuing violation doctrine.[208] There, the court identified three factors relevant to a determination of whether alleged discriminatory acts are related closely enough to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination; (2) the frequency of the

---

[203] Rec. Doc. 58 at 20, 31.

[204] *Waltzman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989) (quoting *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532 (5th Cir. 1986)). *See also Henson*, 128 F. App'x at 390–91 (applying the continuing violation doctrine to Title VII and ADA Claims).

[205] *Messner v. Meno*, 130 F.3d 130, 134–35 (5th Cir. 1997).

[206] *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985) (citations and internal quotations omitted).

[207] *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (internal citations omitted).

[208] 715 F.2d 971 (5th Cir. 1983).

alleged discrimination; and (3) whether the alleged conduct has the degree of permanence which should trigger an employee's awareness of and duty to assert his rights.[209]

The Supreme Court appears to have foreclosed the application of this doctrine, however, in cases where the allegations are "discrete discriminatory acts." In *Nat'l R.R. Passenger Corp. v. Morgan*,[210] the Supreme Court found that "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."[211] The Court explained that "[d]iscrete acts such as termination, failure to promote, denial of transfer or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[212] In that case, the plaintiff had alleged that prior to his firing, he had been wrongfully suspended, denied training, charged with insubordination, and falsely accused of threatening a manager.[213] The Court ruled that claims based on those actions were no longer actionable as they had not been timely filed.[214]

The Supreme Court in *Nat'l R.R.*, however, distinguished hostile work environment claims from those that are discrete acts, stating that hostile work environment claims are "different in kind" because "their very nature involves repeated conduct."[215] The Court held that a hostile

---

[209] *Id*. at 981.

[210] 536 U.S. 101 (2002).

[211] *Id*. at 113.

[212] *Id*. at 114.

[213] *Id*.

[214] *Id*. at 115.

[215] *Id*.

environment claim constitutes a single unlawful employment practice, and so it did not matter that some of the component acts fell outside the statutory period.[216]

Oliver asserts the ADA Discrimination Claim, ADA Retaliation Claim, Title VII Claim, LEDL Disability Discrimination Claim, LEDL Gender Discrimination Claim, and LHRA Retaliation Claim based on Roehm allegedly "subjecting her to a hostile work environment, refusing her tuition reimbursement, failing to promote her, denying her opportunities to work overtime, failing to provide her raises, terminating her from her employment, and threatening to sue her."[217] Although Roehm does not dispute that any claim based on Oliver's October 6, 2020 termination or Roehm's alleged threat to sue her is timely filed, Roehm asserts that any claims based on Roehm's alleged refusal to reimburse Oliver's tuition, promote her, give her raises, or allow her to work overtime should be dismissed as untimely.[218]

The Court finds that Oliver's ADA Discrimination Claim, ADA Retaliation Claim, and Title VII Claim are time-barred to the extent that they are based on Roehm allegedly refusing her tuition reimbursement, failing to promote her, denying her opportunities to work overtime, or failing to provide her raises prior to September 1, 2020. Claims based on these "discrete discriminatory acts are not actionable if time-barred, even [though] they are related to [Oliver's termination] alleged in timely filed charges."[219] Likewise, Oliver's LEDL Disability Discrimination Claim, LEDL Gender Discrimination Claim, and LHRA Retaliation Claim are

---

[216] *Id*. at 17.

[217] Rec. Doc. 48 at 20–21, 23, 25–28.

[218] Rec. Doc. 50-1 at 4; *see also* Rec. Doc. 48 at 4–13.

[219] *Nat'l R.R.*, 536 U.S. at 113.

dismissed to the extent that they are based on discrete employment actions that occurred prior to June 28, 2020.[220]

However, Oliver's ADA Discrimination Claim, ADA Retaliation Claim, Title VII Claim, LEDL Disability Discrimination Claim, LEDL Gender Discrimination Claim, and LHRA Retaliation Claim based on a hostile work environment are not time-barred to the extent that Oliver can state such a claim.[221] The claims are also not time-barred to the extent they are based on Oliver's alleged termination, Roehm's alleged threat to sue, and other employment actions that allegedly occurred after the applicable prescriptive period deadline.

## B.   *Hostile Work Environment Claims*

Roehm also argues that the Second Amended Complaint has failed to state a hostile work environment claim under any statute and that, regardless, no such claim exists under the FMLA, LEDL, LHRA, or ERISA.[222] Oliver argues that she pled all prongs of a hostile work environment claim and that such a claim is available under those statutes.[223] Regardless of whether such a claim exists under the FMLA, LEDL, LHRA, or ERISA, the Court finds that Oliver has failed to plead the prongs of a hostile work environment claim. To state a hostile work environment claim, the harassment alleged must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[224] "For harassment to be sufficiently

---

[220] The Court notes that the Second Amended Complaint alleges certain employment actions that are time-barred under Title VII and the ADA but not prescribed under the LEDL and LHRA. *See* Rec. Doc. 48 at 10, 12–13. Moreover, the Court notes that time-barred discrete employment actions can be used as evidence of Roehm's motivation in taking subsequent employment actions that are not time-barred.

[221] *Nat'l R.R.*, 536 U.S. at 115–117.

[222] Rec. Doc. 50-1 at 21–22.

[223] Rec. Doc. 58 at 8, 20, 26–27, 31.

[224] *Equal Emp't Opportunity Comm'n v. WC&M Enters., Inc.,* 496 F.3d 393, 399 (5th Cir. 2007) (quoting

severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive."[225] Whether the alleged conduct was objectively offensive depends on the totality of circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative."[226]

Oliver claims a hostile work environment based on Roehm allegedly excluding her from team meetings that all employees attended when she started working remotely after the First FMLA Leave, and "removing her access to the company's intranet and instructing her co-workers not to speak to her for any reason" while she was on her Second FMLA Leave.[227] Oliver does not allege that she was subjected to any physically threatening or humiliating harassment based on her disability, gender, or activity related to the FMLA or ERISA. Furthermore, Roehm allegedly removing Oliver's access to the company intranet and instructing her co-workers not to speak with her while she was on FMLA leave could not have interfered with her work performance because she was on leave. Rather, Roehm's employees were allegedly told not to contact her and thus not to harass her. Regardless, the Fifth Circuit has held that being ostracized "falls into the category of 'petty slights, minor annoyances, and simple lack of good manners."[228] In a recent unpublished opinion, the Fifth Circuit stated that discrete employment actions such as denials of promotion

---

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).

[225] *Id.*

[226] *Id.*

[227] Rec. Doc. 58 at 8–9.

[228] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).

"are not offensive or harassing in the way necessary to support a hostile work environment claim" even if they constitute adverse employment actions.[229]  Therefore, taken together, Roehm's alleged actions are not sufficiently extreme to state a claim for hostile work environment.[230]  Thus, any hostile work environment claim in the Second Amended Complaint must be dismissed.

## C.     *Failure to Promote Claim*

Roehm also argues that Oliver fails to state a failure to promote claim because Oliver does not allege that she applied to a particular position, let alone that she was qualified.[231]  Oliver argues that the Second Amended Complaint states a failure to promote claim because her increased responsibilities made her qualified for promotion and because she was prevented from applying to a document control specialist position during her Second FMLA Leave due to being blocked from Roehm's intranet site.[232]  In order to state a claim for failure to promote, Oliver must allege that:

> (1) she was not promoted, (2) she was qualified for the position she sought, (3) she was within the protected class at the time of the failure to promote, and (4) either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her [protected class status].[233]

Roehm does not dispute that Oliver's allegations satisfy the first or third prongs.  Furthermore, Oliver alleges that Roehm hired Stephen Fischer, a man who had never taken FMLA leave, to the

---

[229] *Montgomery-Smith v. George,* 810 F. App'x 252, 259 (5th Cir. 2020).

[230] *See id.* at 259–60 (holding that repeatedly denying plaintiff promotion, moving plaintiff's office, not inviting plaintiff to the Thanksgiving luncheon, isolating plaintiff from her coworkers, and instructing other employees not to talk to plaintiff, among other incidents, was not extreme conduct sufficient to sustain a hostile work environment claim).

[231] Rec. Doc. 50-1 at 23–24.

[232] Rec. Doc. 58 at 6–7.

[233] *Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179 (5th Cir. 1999).

document control specialist position.[234] Thus, Oliver alleges that Roehm hired someone outside of Oliver's sex, a protected class, under the fourth prong. Therefore, only the second prong—whether Oliver was qualified for the position she sought—is at issue.

The Court finds that Oliver states a claim that she was qualified for the document specialist position. The Second Amended Complaint clearly states that the document control specialist position "was a promotion [for Oliver] and was well-tailored to [Oliver's] experience and qualifications."[235] Furthermore, it states that Oliver "has almost fifteen years of experience as an administrator" and "was very successful" in her role at Roehm.[236] Thus, Oliver has plausibly alleged that she was qualified for the position.

However, Oliver never alleges that she applied to the document control specialist position, and thus Roehm argues that she never "sought" the position as required to satisfy the second prong. Oliver argues that she can still pursue a failure to promote claim because, under *Int'l Bhd. of Teamsters v. United States*,[237] Oliver was made to believe that an application would be futile.[238]

In *Teamsters*, the Supreme Court held that failure to apply to a position was not a bar to asserting a failure to promote claim where the employer's policy of discrimination would make the application futile.[239] "Making such a claim usually requires a showing that the applicant for

---

[234] Rec. Doc. 48 at 13.

[235] *Id.*

[236] *Id.* at 5.

[237] 431 U.S. 324, 366-67 (1977).

[238] Rec. Doc. 58 at 7.

[239] *Teamsters*, 431 U.S. 324 at 365-366; *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999).

the promotion was deterred by a known and consistently enforced policy of discrimination."[240]
Although the Fifth Circuit has not expanded upon *Teamsters*, in *Equal Emp't Opportunity Comm'n v. Metal Serv. Co.*[241] the Third Circuit held that an application is not necessary where the plaintiff "made every reasonable attempt to convey interest in the job."[242] Furthermore, in *Paxton v. Union Nat'l Bank*[243] the Eighth Circuit also found that no formal application is necessary where the plaintiff expresses an interest in a position prior to its vacancy, but no notice of vacancy is ever posted and the position is filled without the plaintiff's knowledge.[244] Regarding these cases, in an unreported opinion, *Kolpakchi v. Principi*,[245] the Fifth Circuit stated:

> [T]he holdings in *Paxton* and *Metal Service Co.* indicate an expansion of this principle to encompass situations where, through the fault of the employer, an employee's desire to hold a position is not recognized or properly considered. We have not explicitly adopted our sister circuits' rules with regards to the necessity of a formal application; nor have we specifically rejected such a more expansive rule. The District Court for the Southern District of Texas has accepted it, though.[246]

In *Kolpakchi*, the Fifth Circuit found that, even if it did adopt a more lenient standard, the plaintiff failed to present a prima facie case of failure to promote because she did not make every reasonable attempt to convey her interest in the job and knew about the opening.[247]

---

[240] *Shackelford*, 190 F.3d at 406.

[241] 893 F.2d 341, 348 (3d Cir. 1990).

[242] *Id*. at 348.

[243] 688 F.2d 552 (8th Cir 1982).

[244] *Id.* at 568.

[245] 113 F. App'x 633 (5th Cir. 2004).

[246] *Id*. at 637 (citing *Dupont-Lauren v. Schneider (USA), Inc.*, 994 F.Supp. 802, 818 (S.D. Tex. 1998) (not requiring a formal application "where a vacant position was not posted); *Lenihan v. Boeing Co.*, 994 F.Supp. 776, 794 (S.D. Tex. 1998)).

[247] *Id*. at 638.

Unlike in *Kolpakchi*, Oliver alleges both that she did not know about the document control specialist opening because she was blocked from seeing Roehm's intranet and that she repeatedly requested promotions and raises.[248] In other words, Oliver alleges that through the fault of Roehm, Oliver's clear desire for a promotion was not recognized nor properly considered.[249] Thus, adopting the expansive view of *Teamsters* that the Fifth Circuit has declined to reject, the Court finds that Oliver has alleged facts to show that she sought a promotion under the second prong. Therefore, Oliver states a failure to promote claim against Roehm. Thus, the Court denies the instant motion to the extent that it seeks to dismiss Oliver's failure to promote claim related to the document control specialist position.[250]

## D.    *FMLA Claim*

Oliver brings a cause of action against Roehm under the FMLA for interference, denial, and retaliation of her rights under the statute.[251] Roehm argues that the FMLA Claim against it should be dismissed because Oliver has failed to establish a causal relationship between her taking FMLA leave and her termination.[252] Oliver argues that she properly states the FMLA Claim based both on Roehm's interference with her ability to utilize FMLA leave (the "FMLA Interference Claim") and Roehm's discrimination and retaliation against her for taking FMLA leave (the

---

[248] *See* Rec. Doc. 48 at 4, 6, 12.

[249] *See Kolpackchi*, 688 F.2d at 568.

[250] As discussed above, any failure to promote claim that occurred before September 1, 2020 (for federal claims) or June 28, 2020 (for state law claims) is time-barred.

[251] Rec. Doc. 48 at 17.

[252] Rec. Doc. 50-1 at 7.

"FMLA Retaliation Claim").[253] The Court analyzes the FMLA Interference Claim and the FMLA Retaliation Claim in turn.

### 1.    FMLA Interference Claim

First, the Court analyzes whether Oliver properly states the FMLA Interference Claim. The FMLA prohibits employers from "interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act."[254] To establish a prima facie FMLA interference case, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant was an employer subject to the FMLA's requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA.[255] As Oliver points out, "Roehm provides no argument in support of its request for the dismissal of Oliver's [FMLA Interference Claim]."[256] Therefore, Roehm's motion to dismiss the FMLA Claim is denied to the extent it seeks dismissal of the FMLA Interference Claim.

### 2.    FMLA Retaliation Claim

Second, the Court analyzes whether Oliver properly states the FMLA Retaliation Claim. To state a prima facie claim for retaliation under the FMLA, a plaintiff must allege: "(1) [s]he is protected under the FMLA; (2) [s]he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under

---

[253] *See id.* at 4–5.

[254] 29 C.F.R. § 825.220.

[255] *See Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013).

[256] Rec. Doc. 58 at 5; *see also* Rec. Doc. 50-1 at 6–7. In its reply memorandum, Roehm does not rebut Oliver's assertion that it provides no argument for dismissing the FMLA Interference Claim, and offers no further support for dismissal of the claim. *See* Rec. Doc. 64.

the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave."[257] The parties do not dispute that Oliver states a claim under the first and second prongs. However, Roehm asserts that Oliver fails to establish a prima facie case under the third prong by arguing both that Oliver "made no allegations as to other employees who had not requested FMLA leave receiving more favorable treatment" and that "she has not alleged that her request for leave, or the leave itself, caused her termination."[258] Oliver argues both that she "sufficiently pled that she was treated worse than other employees who did not request FMLA leave" and pled sufficient close temporal proximity to establish that she was terminated due to her taking FMLA leave.[259]

The Court finds that Oliver stated a prima facie case for FMLA retaliation because she pleads sufficient facts to state a claim that her termination was due to her taking FMLA Leave. The Fifth Circuit has stated the following regarding a plaintiff's burden of demonstrating causation:

> When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave, and the termination. Moreover, the plaintiff does not have to show that the protected activity is the only cause of her termination. The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated.[260]

---

[257] *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).

[258] Rec. Doc. 50-1 at 6–7.

[259] Rec. Doc. 58 at 9–10.

[260] *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quoting *Mauder v. Metro. Transit Auth. Of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006)).

Thus, although Roehm argues that the real reason for Oliver's termination was "her overtime abuse and the fact that she did not suffer from a serious health condition to begin with," Oliver need not show that these justifications did not contribute to her termination.[261]

Furthermore, the Second Amended Complaint alleges facts sufficient to state a claim that the termination of Oliver's employment and her taking FMLA leave were not completely unrelated. Oliver alleges that, after she returned from the First FMLA Leave, she was barred from team meetings she had previously attended and told to stop working overtime hours.[262] Then, Oliver alleges that, while she was on the Second FMLA Leave, Brown started investigating her hours and timesheets, removed her intranet access, and instructed Roehm staff not to speak to her.[263] Finally, Oliver alleges that, while still on the Second FMLA Leave, she was fired for "gross misconduct" that did not occur.[264] These alleged facts taken together and the alleged temporal proximity between Roehm's actions and Oliver taking FMLA Leave make it plausible that her termination was not completely unrelated to her taking FMLA Leave.

Nevertheless, Roehm argues that the allegations are "utterly implausible" given that the company approved Oliver's requests for FMLA leave.[265] However, the Second Amended Complaint states that "Oliver was instructed to request her FMLA leave through Sedgwick, whom Roehm contracted with to process all leave and disability requests on Roehm's behalf."[266] It is

---

[261] *See* Rec. Doc. 50-1 at 7.

[262] Rec. Doc. 48 at 9–10.

[263] *Id*. at 12–13.

[264] *Id*. at 13–14.

[265] Rec. Doc. 50-1 at 7.

[266] Rec. Doc. 48 at 9.

certainly not "utterly implausible" that Roehm and its employees retaliated against Oliver after her request for FMLA leave was granted by a third party. Therefore, Oliver states a claim of causation under the third prong sufficient to sustain the FMLA Retaliation Claim.[267] Thus, the motion is denied to the extent Roehm seeks dismissal of the FMLA Claim.

### E.  *ADA Discrimination Claim and LEDL Disability Discrimination Claim*

Oliver brings causes of action against Roehm under the ADA and LEDL for disability discrimination.[268] Roehm argues that the ADA Discrimination Claim and the LEDL Disability Discrimination Claim (collectively, the "Disability Claims") should be dismissed because Oliver did not present a failure to accommodate claim in the EEOC Charge, Oliver was not disabled, and a request for FMLA leave is not a request for a reasonable accommodation.[269] Oliver makes identical discrimination claims under the ADA and LEDL.[270] "[T]he same analysis [under the ADA and LEDL] applie[s] because Louisiana courts look to federal employment discrimination law for guidance in interpreting the [LEDL]."[271] Thus, the Court analyzes the Disability Claims together. Oliver argues that she properly states these claims by alleging both that Roehm subjected her to disability discrimination and failed to accommodate her disability.[272] The Court considers

---

[267] The Court notes that, although Oliver argues she demonstrates causation under the third prong by alleging in the Second Amended Complaint that she was treated worse than other employees who had not taken FMLA Leave, she only states that she was treated worse than other "male hourly employees." *Id.* at 15. Oliver does not allege that these male employees had never taken FMLA Leave. *See id.* Therefore, the Second Amended Complaint does not allege that Oliver was treated worse than other employees who had not taken FMLA Leave sufficient to satisfy the causation prong.

[268] Rec. Doc. 48 at 19, 22.

[269] Rec. Doc. 50-1 at 6, 8–9.

[270] *See* Rec. Doc. 48 at 19–24.

[271] *Credeur v. La. Through Off. of Atty. Gen.*, 860 F.3d 785, 791 n.3 (5th Cir. 2017).

[272] Rec. Doc. 58 at 11–12, 22.

whether the Disability Claims can be sustained based on Roehm's alleged discrimination and failure to accommodate in turn.

### 1.    Disability Discrimination

Roehm argues that the Second Amended Complaint fails to state the Disability Claims based on discrimination because it fails to allege that Oliver was disabled under the ADA or to allege intentional discrimination. Oliver argues that the Second Amended Complaint properly states the Disability Claims based on discrimination because she was disabled under the ADA and because she was terminated due to her disability. To state a claim of disability discrimination under the ADA, Plaintiff "must establish: (1) [s]he has a disability, or was regarded as disabled; (2) [s]he was qualified for the job; and (3) [s]he was subject to an adverse employment decision on account of [her] disability."[273] Roehm contests only that Oliver has failed to establish the first and third prongs.[274]

Under the first prong, a disability under the ADA, as amended by the ADA Amendment Act of 2008 ("ADAAA") is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[275] The relevant time for determining whether the plaintiff had a disability is the time of the adverse employment action.[276] Since the passage of the ADAAA, the Fifth Circuit has held that the "substantially limits" inquiry under subsection (A)

---

[273] *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).

[274] Rec. Doc. 50-1 at 10–11; Rec. Doc. 64 at 5–6.

[275] 42 U.S.C. § 12102(1).

[276] *Equal Emp't Opportunity Comm'n v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 619 (5th Cir. 2009).

is whether the plaintiff's "impairment substantially limits his ability to 'perform a major life activity as compared to most people in the general population.'"[277] "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."[278]

In arguing that Oliver is not disabled under the ADA, Roehm relies on cases decided prior to the ADAAA.[279] However, the Fifth Circuit has explained that the ADAAA was implemented to expand the definition of disability in favor of broad coverage such that "the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis."[280]

Oliver plausibly states that she is disabled under this more relaxed standard. She alleges that, in February 2020, she suffered a meniscal tear in her knee, causing atrophy to her leg and labral tear in her hip.[281] As a result, Oliver alleges that she "could not run, walk long distances, or use the stairs without pain."[282] In March 2020, Oliver alleges that she underwent a knee surgery[283] and that she subsequently began working from home after the First FMLA Leave based in part on

---

[277] *Canon v. Jacobs Field Servs. N. Am.*, 813 F.3d 586, 591 (5th Cir. 2016) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

[278] 42 U.S.C. § 12102(2).

[279] *See* Rec. Doc. 50-1 at 10.

[280] *See Canon*, 813 F.3d at 590–91 (quoting 29 C.F.R. § 1630.2(j)(1)(iii)-(iv)).

[281] Rec. Doc. 48 at 8.

[282] *Id.*

[283] *Id.*

her doctor's recommendation.[284] However, even after the first surgery, Oliver alleges that she "continue[d] to experience severe pain in her knee, and could not walk long distances without pain, perform household tasks, use stairs, or exercise."[285] Thus, in August 2020, Oliver alleges that she required a second surgery because "[t]he continuing injury was so severe, that . . . she could not safely drive, climb, crawl, or stand for long periods without [it]."[286] To recover from the surgery, Oliver's physician allegedly requested that she take the Second FMLA Leave through October 30, 2020.[287] Based on these allegations, it is plausible that Oliver suffered an impairment to her leg which limited her ability to perform the major life activities of walking, standing, and caring for oneself compared to the general population.

Nevertheless, Roehm argues that the condition was temporary and thus does not constitute a disability. The Court finds this argument unavailing. The ADAAA states that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."[288] Although the ADAAA also states that an employee cannot be regarded as having a disability by an employer where the condition known is "transitory and minor," it defines a transitory condition as "an impairment with an actual or expected duration of 6 months or less."[289] At the time of her termination, Oliver allegedly had been suffering from the injury for approximately eight months, had undergone an unsuccessful surgery, and needed additional

---

[284] *Id*. at 9.

[285] *Id*. at 10.

[286] *Id*. at 11.

[287] *Id*.

[288] 42 U.S.C. § 12102(4)(D)

[289] § 12102(3)(B)

surgery to try and repair the injury. Thus, Oliver plausibly alleges that her condition was not transient and continued to substantially limit major life activities. Accordingly, Oliver plausibly alleges that she was disabled to satisfy the first prong of a disability discrimination claim.[290]

Roehm also argues that Oliver fails to establish the third prong of a disability discrimination claim—that Oliver was subject to an adverse employment decision on account of her disability. Roehm asserts that Oliver relies entirely on the alleged close temporal proximity between her injury and her termination, which is insufficient to establish the third prong.[291] However, as the Court has already addressed, Oliver is merely required to show that her termination was not completely unrelated to her disability to establish causation. Given that the Court has already found that the Second Amended Complaint plausibly alleges that Oliver's termination was not completely unrelated to her Second FMLA Leave, and Oliver took her Second FMLA Leave due to her alleged disability, it is plausible that her termination was due to her alleged disability. Thus, Oliver states a claim against Roehm for disability discrimination. Therefore, the instant motion is denied to the extent that Roehm seeks dismissal of any disability discrimination claim asserted in the Disability Claims.

### 2.    Failure to Accommodate

Roehm also argues that the Second Amended Complaint fails to state a claim for failure to accommodate in the Disability Claims because Oliver did not exhaust her administrative remedies and because a request for FMLA Leave is not a request for reasonable accommodation under the

---

[290] *See Cannon*, 813 F.3d at 588–91 (finding that plaintiff's rotator cuff injury qualified as a disability under the ADA because his surgery was unsuccessful and he had difficulty lifting, pushing, or pulling objects with that arm).

[291] Rec. Doc. 64 at 6.

ADA.[292] Oliver argues that she requested the reasonable accommodation of continued job protection while on the Second FMLA Leave and exhausted her administrative remedies by presenting a failure to accommodate claim in the EEOC Charge.

Under the ADA, "[e]mployees who require accommodation due to a disability are responsible for requesting a reasonable accommodation."[293] The Fifth Circuit has clearly stated that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA" because "it is a right enforceable under a separate statutory provision."[294] Thus, Oliver cannot now say that Roehm failed to provide her with the alleged requested accommodation of continued employment while on her Second FMLA Leave because she never alleges that she requested such an accommodation and because she can allege, as she does through her FMLA Claim, that her termination while on FMLA Leave was an interference with her right to FMLA leave under this separate statutory provision. Furthermore, to the extent that Oliver requested the reasonable accommodation of working from home, Roehm allegedly granted the request until Oliver took the Second FMLA Leave.[295] Thus, the motion to dismiss is granted with respect to Oliver's claim that Roehm failed to accommodate her disability in violation of the ADA.

## F.    *ADA Retaliation Claim*

Oliver brings a cause of action against Roehm under the ADA for retaliation.[296] Roehm argues that the ADA Retaliation Claim should be dismissed because it is duplicative of the FMLA

---

[292] Rec. Doc. 50-1 at 8.

[293] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017).

[294] *Id*. (quoting *Harville v. Tex. A&M Univ.*, 833 F.Supp.2d 645, 661 (S.D. Tex. 2011)).

[295] Rec. Doc. 48 at 9, 11.

[296] *Id*. at 21.

Retaliation Claim and Oliver did not engage in an activity protected by the ADA.[297] Oliver argues that she engaged in the protected activity of requesting and obtaining a reasonable accommodation and that she was terminated in retaliation for doing so.[298] "To show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action."[299]

Under the first prong, Roehm argues that Oliver did not engage in an activity protected by the ADA because a request for FMLA leave is not a request for a reasonable accommodation. However, Roehm ignores the fact that the Second Amended Complaint plausibly alleges that Oliver requested and obtained the accommodation of working from home after the First FMLA Leave ended in March of 2020.[300] The Fifth Circuit has stated with approval that "[e]very appeals court to consider [the issue of whether requesting an accommodation is a protected activity] has concluded it is protected as long as the employee had the reasonable belief that he was covered by the ADA."[301] Roehm does not dispute that this alleged request was based on Oliver's reasonable belief that she was disabled. Thus, Oliver plausibly alleges that she engaged in a protected activity under the ADA by requesting that she work from home to help recover from her surgery.

---

[297] Rec. Doc. 50-1 at 11–12.

[298] Rec. Doc. 58 at 24–26.

[299] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (citing *Grizzle v. The Travelers Health Network*, 14 F.3d 261 (5th Cir.1994)).

[300] *See* Rec. Doc. 48 ("Oliver's physician, Dr. Jason Rolling, requested that [Oliver] be permitted to work from home as she continued to recover from surgery.").

[301] *Chevron*, 570 F.3d at 620 n.9 (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007*); Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 106 (1st Cir. 2007); *Cassimy v. Bd. of Educ.*, 461 F.3d 932, 938 (7th Cir. 2006); *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997).

Oliver also alleges that she suffered an adverse employment action under the ADA when she was terminated on October 6, 2020.[302] Roehm does not specifically argue that Oliver cannot establish a causal connection between her alleged request for accommodation and her termination to satisfy the third prong.[303] Regardless, based on the facts alleged in the Second Amended Complaint, it is plausible that such a causal connection exists. The Fifth Circuit has held that "[a] plaintiff alleging retaliation may satisfy the causal connection prong by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'"[304] Although the six month gap between Oliver's alleged request and her termination "is not close enough without other evidence of retaliation," Oliver alleges that Roehm departed "from typical policies and procedures" to plead a causal connection.[305] Oliver alleges that after the First FMLA Leave ended and soon after her request to work from home, Scott removed her from team meetings that she had participated in since she was first hired, and which other employees attended remotely.[306] Oliver also alleges she was told to stop working overtime, even though she had "typically worked hundreds of hours of overtime a year."[307] These alleged deviations from Roehm's typical policies

---

[302] *See* Rec. Doc. 48 at 13.

[303] *See* Rec. Docs 50-1 at 11–12, 64 at 5–7.

[304] *Feist v. La. Dep't of Justice, Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007)).

[305] *See id.* at 454–455 ("[A] five month lapse is not close enough without other evidence of retaliation. Such evidence may include an employment record that does not support dismissal, or an employer's departure from typical policies and procedures.") (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002); *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011).

[306] *See* Rec. Doc. 48 at 9–10.

[307] *Id.* at 10.

provide additional support for a causal connection between Oliver's request to work from home to satisfy the third prong. Thus, Oliver plausibly states the ADA Retaliation Claim.

However, Roehm also argues that the ADA Retaliation Claim should be dismissed to the extent Oliver seeks compensatory or punitive damages "because the relief available under the ADA's anti-retaliation provision is limited to equitable remedies."[308] Oliver argues that there is a circuit split on the issue and asks the Court to follow the several circuits that have awarded compensatory and punitive damages on ADA retaliation claims.[309]

Roehm relies on *Rizzo v. Blues Mgm't, Inc.,*[310] where a magistrate judge in the Southern District of Texas dismissed a plaintiff's claim for compensatory and punitive damages on her ADA retaliation claim.[311] The magistrate judge reasoned that only equitable remedies were available because the ADA retaliation statute provides only equitable remedies as examples of appropriate relief and it is a "canon of statutory construction that where a statute expressly provides a particular remedy or remedies," a court should be wary of reading others into it.[312] Although Roehm argues that the Fifth Circuit has not ruled on this issue, the Fifth Circuit has stated that a plaintiff must prove intentional discrimination to recover compensatory damages for an ADA claim.[313] Furthermore, the Fifth Circuit has ruled that a plaintiff must prove reckless indifference to recover

---

[308] Rec. Doc. 50-1 at 11.

[309] Rec. Doc. 58 at 26.

[310] No. 4:16-01017, 2017 WL 549016 (S.D. Tex. Jan. 24, 2017).

[311] *Id*. at *4.

[312] *Id*. at *3 (quoting *George v. Aztec Rental Ctr. Inc.*, 763 F.3d 184, 187 (5th Cir. 1984)).

[313] *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (A plaintiff "asserting a private cause of action for violations of the ADA [] may only recover compensatory damages upon a showing of intentional discrimination.") (citing *Carter v. Orleans Parish Pub. Sch.*, 725 F.2d 261, 264 (5th Cir. 1984)).

punitive damages for an ADA claim.[314] Thus, the motion is granted with respect to Oliver's claim against Roehm for compensatory and punitive damages on the ADA Retaliation Claim.

## G.     *LHRA Retaliation Claim*

Oliver also brings a cause of action against Roehm under the LHRA pursuant to Louisiana Revised Statute  § 51:2256.[315] Roehm argues that any discrimination claim under the LHRA should be dismissed because § 51:2256 does not apply to unlawful discrimination.[316] Oliver argues that the LHRA Retaliation Claim should not be dismissed for the same reasons that the ADA Retaliation Claim should not be dismissed.[317] However, Oliver concedes that the LHRA does not apply to discrimination claims and states that the LHRA Retaliation Claim is limited only to claims for retaliation.[318] The parties are correct that a claim of discrimination can no longer be brought under the LHRA pursuant to § 51:2256.[319] "Instead liability under [§ 51:2256] 'is limited to retaliation against practices made unlawful under the [LHRA].'"[320] Thus, the Court grants the motion to dismiss the LHRA Retaliation Claim to the extent it asserts a discrimination or failure to accommodate claim against Roehm.

---

[314] *Equal Emp't Opportunity Comm'n v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 732 (5th Cir. 2007); *see also Miles-Hickman v. David Powers Homes, Inc.*, 613 F.Supp.2d 872, 877 (S.D. Tex. 2004) (citing 42 U.S.C. § 12117(a)).

[315] Rec. Doc. 48 at 28.

[316] Rec. Doc. 50-1 at 13.

[317] Rec. Doc. 58 at 24.

[318] *Id*. at 33.

[319] *Montgomery-Smith v. La. Dep't of Health and Hosps.*, 299 F.Supp.3d 790, 809 (E.D. La. 2018) ("[I]t is clear 'that as a matter of law, § 51:2256 no longer applies to unlawful discrimination.'") (quoting *Smith v. Parish of Washington*, 318 F.Supp.2d 366, 373 (E.D. La. 2004)).

[320] *Id*. (quoting *Smith*, 318 F.Supp.2d at 373)).

*H.*      *Title VII Claim and LEDL Gender Discrimination Claim*

Oliver brings a cause of action against Roehm under Title VII and the LEDL for gender discrimination.[321] Roehm argues that the Title VII Claim and LEDL Gender Discrimination Claim (collectively, the "Gender Claims") should be dismissed because Oliver "never alleges any similarly situated male administrative assistants exist at all," let alone that they were treated more favorably.[322] Oliver argues that the Gender Claims should not be dismissed because the Second Amended Complaint alleges that male employees under the same supervisor were treated more favorably.[323] Oliver makes identical discrimination claims under Title VII and the LEDL.[324] The Fifth Circuit has found that, because Title VII and the LEDL are "substantively similar, and Louisiana courts routinely look to federal jurisprudence for guidance," the outcome of a gender discrimination claim "will be the same under the federal and state statutes."[325] Thus, the Court analyzes the Gender Claims together under the Title VII standard.

To establish a prima facie case of gender discrimination under Title VII, a plaintiff must properly state that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged . . .; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group."[326] Roehm contests only that Oliver fails to satisfy the fourth prong. However, the Second Amended

---

[321] Rec. Doc. 48 at 25–26.

[322] Rec. Doc. 50-1 at 13–14.

[323] Rec. Doc. 58 at 32–33.

[324] *See* Rec. Doc. 48 at 25–27.

[325] *McCoy*, 492 F.3d at 556 n.4.

[326] *Id.* at 556.

Complaint clearly alleges that Oliver was replaced by a man. Thus, Oliver alleges that she was replaced by someone outside her sex, a protected group, to satisfy the fourth prong. Therefore, the instant motion is denied to the extent it seeks to dismiss Oliver's Gender Claims.

## I.   *ERISA Claim*

Oliver brings a cause of action against Roehm for retaliating against her for exercising her rights under ERISA.[327] Roehm argues that the ERISA Claim should be dismissed because the Second Amended Complaint pleads no facts to suggest that Roehm had any intent to discriminate against Oliver based on her receipt of any ERISA-covered benefit.[328] Oliver argues that the ERISA Claim should not be dismissed because circumstantial evidence alleged in the Second Amended Complaint is sufficient to allege that Roehm's intent to interfere with her attainment of group health benefits.[329] "To sustain a valid § 510 ERISA claim [of retaliation for exercising one's rights under the act], an employee must show: (1) prohibited (adverse) employer action (2) taken for the purpose of interfering with the attainment of (3) any right to which the employee is entitled."[330] Roehm contests only the second prong—whether its actions were taken for the purpose with Oliver's attainment of group health benefits.

Roehm argues that Oliver fails to establish the second prong because Roehm has permitted many employees to take leave and receive disability benefits, Oliver had already received "the vast majority of benefits" and Oliver "never discussed the possibility of further treatment with Roehm

---

[327] Rec. Doc. 48 at 29.

[328] Rec. Doc. 50-1 at 14–15.

[329] Rec. Doc. 58 at 28.

[330] *Bodine v. Emp'rs Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003).

personnel."[331] Oliver argues the Second Amended Complaint alleges facts sufficient to satisfy the second prong given the alleged close temporal proximity between her termination, her receipt of short-term disability benefits, and her second surgery.[332] Oliver also argues that discriminatory intent can be inferred because Roehm allegedly knew about her increasing benefits and declining health, handled her termination suspiciously, and treated her differently than other employees.[333]

As in other retaliation claims, the Fifth Circuit has found that, to satisfy the second prong of an ERISA retaliation claim, "[a] plaintiff need not show that the sole reason for the termination was to interfere with rights protected by ERISA; he need only prove that a specific intent to violate ERISA partly motivated the employer."[334] Furthermore, "[a] plaintiff may raise the inference of discrimination by direct or circumstantial evidence."[335] The Court finds that the Second Amended Complaint plausibly states a claim that Roehm intended to interfere with Oliver's ERISA-covered benefits given that it alleges a close temporal proximity between Oliver's alleged request for the Second FMLA Leave and her termination, Roehm's alleged awareness of Oliver's health issues at the time of her termination due to the request, and Roehm's alleged false accusations to justify her termination. Therefore, the motion is denied to the extent it seeks dismissal of the ERISA Claim.

---

[331] Rec. Doc. 50-1 at 15–16.

[332] Rec. Doc. 58 at 28.

[333] *Id*. at 28–29.

[334] *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1992) (citing *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 (5th Cir. 1992)).

[335] *Id*. (citing *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir. 1997)).

### J.   LUTPA Claim

Oliver brings a cause of action under LUTPA accusing Roehm of engaging "in unfair or deceptive acts or practices in the conduct of commerce."[336] Roehm argues that the LUTPA Claim should be dismissed because Oliver does not allege that Roehm's conduct violated any purpose of LUTPA.[337] Oliver argues that the LUTPA Claim should not be dismissed because Roehm's behavior was so unethical that it violated the statute.[338]

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[339] A "plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct" to recover under the statute.[340] The Louisiana Supreme Court has stated that "[t]he range of prohibited practices under LUTPA is extremely narrow" such that "only egregious actions involving elements of fraud, misrepresentation, deception or other unethical conduct will be sanctioned based on LUTPA."[341] More recently, the Louisiana Supreme Court explained:

 LUTPA was modeled after the Federal Trade Commission Act (hereinafter "FTC Act"), and the two acts share the same goals: to protect consumers and to foster competition. Specifically, these goals include halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry.[342]

---

[336] Rec. Doc. 48 at 31.

[337] Rec. Doc. 50-1 at 18.

[338] Rec. Doc. 58 at 35.

[339] La. Rev. Stat. § 51:1405(A).

[340] *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (internal quotation marks and citations omitted).

[341] *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10); 35 So. 3d 1053, 1060.

[342] *Quality Env't Process, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025

Therefore, although it is true that Louisiana courts consider employee interests when applying LUTPA, "[t]he interest of employees that [] LUTPA seeks to protect is their ability to 'exercise their right to change employment, even if they decided to work for a competitor of their former employer.'"[343] Thus, as stated in *Oncale v. CASA of Terrebonne Parish, Inc.*, by another court in the Eastern District of Louisiana, "[a] Louisiana court has never held that protection from discrimination is another employee interest that [] LUTPA also seeks to address—separate statutes encompass these concerns."[344]

Both Oliver and the plaintiff in *Oncale* rely on a ruling by a court in the Western District of Louisiana, *Tripp v. Pickens*,[345] to argue that "Louisiana federal courts, applying Louisiana law, have found employee LUTPA claims identical to Oliver's viable."[346] As the court in *Oncale* explained, *Tripp* is not applicable to the termination of an employment relationship because the plaintiffs in that case were not employees of the defendants, but under contract with defendants to produce solar pumps.[347] Thus, Oliver fails to state a claim under LUTPA because she provides no other support for her assertion that LUTPA applies to employment discrimination and retaliation claims and does not plausibly allege that Roehm's purpose in terminating her employment was to

---

(internal citations omitted).

[343] *Oncale v. CASA of Terrebonne Parish, Inc.*, No. 19-14760, 2020 WL 3469838, at *19 (E.D. La. June 25, 2020) (quoting *Cheramie*, 35 So. 3d at 1060).

[344] *Id*. (citing La. Rev. Stat. §§ 23:301 *et seq.*).

[345] No. 17-0542, 2019 WL 1966132 (W.D. La. May 1, 2019).

[346] Rec. Doc. 58 at 34; *Oncale*, 2020 WL 3469838, at *20.

[347] *Oncale,* 2020 WL 3469838, at *20 (citing *Tripp*, 2019 WL 1966132, at *1, *4–6).

harm competition or violate any other purpose of LUTPA.[348] Therefore, the instant motion is granted to the extent it seeks dismissal of the LUTPA claim.

### K.    IIED Claim

Oliver brings a claim of IIED against Roehm.[349] Roehm argues that the alleged conduct at issue does not reach the level of "extreme and outrageous" required to support a claim for IIED.[350] Oliver alleges that the IIED Claim should not be dismissed because Roehm "took intentional and active steps to retaliate, terminate, and intimidate [Oliver] to not pursue her legal claims."[351] To prevail on an IIED claim, a plaintiff must show that: (1) defendant's conduct was extreme and outrageous; (2) plaintiff's emotional distress was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from the conduct at issue.[352]

Roehm only argues that Oliver cannot establish the first prong—that the alleged conduct of Roehm's employees was extreme and outrageous. A defendant's conduct satisfies the "extreme and outrageous" standard if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[353] "Merely tortious or illegal conduct does not rise to the level of extreme

---

[348] *Id.* at *19–20.

[349] Rec. Doc. 48 at 32.

[350] Rec. Doc. 50-1 at 19.

[351] Rec. Doc. 58 at 37.

[352] *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (citing *White v. Monsanto Co.*, 91-0148 (La. 9/9/91); 585 So. 2d. 1205, 1209).

[353] *White*, 585 So. 2d at 1209.

and outrageous."[354] Although activity in the Louisiana workplace environment can give rise to a cause of action for IIED, "this state's jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time."[355]

Oliver alleges in the Second Amended Complaint that Roehm terminating Oliver as she recovered from knee surgery "after promising her protected leave, and then repeatedly threatening to sue her, was extreme and outrageous."[356] Roehm argues that "terminating [Oliver's] employment based on alleged overtime and FMLA fraud was utterly reasonable" and, thus, did not rise to the level of extreme and outrageous.[357] The Court finds that Oliver fails to state a claim that her termination while on the Second FMLA Leave was extreme and outrageous. Oliver provides no support for such a conclusion. Rather, even if her termination was wrongful, she may not rely on wrongful termination to support a claim for IIED because she was an at-will employee.[358] By default, Oliver is an at-will employee under Louisiana law because she has failed

---

[354] *W.T.A. v. M.Y.*, 2010-839 (La. App. 3 Cir. 3/9/11); 58 So. 3d 612, 616.

[355] *King v. Bryant*, 2001-1379 (La. App. 3 Cir. 7/10/02); 822 So. 2d 214, 217.

[356] Rec. Doc. 48 at 32.

[357] Rec. Doc. 50-1 at 19.

[358] *See White v. Allstate Ins. Co.*, No. 95-4234, 1996 WL 109300, at *3 (E.D. La. Mar. 12, 1996) (Vance J.) (citing *Stevenson v. Lavalco, Inc.,* 28,020 (La. App. 2 Cir. 2/28/96); 669 So. 2d 608, 612; *Hammond v. Med. Arts Grp., Inc.*, 89-881 (La. App 3 Cir. 2/6/91); 574 So. 2d 521, 525); *see also Tisdale v. Woman's Hosp.*, 191 F. App'x 255, 257 (5th Cir. 2006) (citing *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00); 765 So. 2d 1017, 1022).

to allege any facts to allow this Court to conclude otherwise.[359] Thus, Oliver may not rely on her termination to state the IIED Claim.[360]

Oliver also relies on Brown and Stillufsen's alleged false accusations and threats to sue her in response to the EEOC Charge to support the IIED Claim. Roehm argues that these "post-termination activities do not rise to an actionable level."[361] Roehm cites *Greater New Orleans Fair Housing Action Center, Inc., v. Dopp*[362] ("*GNOFHAC*"), a case decided by another district judge in the Eastern District of Louisiana, to support this argument.[363] In *GNOFHAC*, the district court found that the defendant failed to state a counterclaim of IIED against plaintiff where the defendant alleged that the plaintiff proposed settlement terms it knew the defendant could not pay, made unfounded allegations against the defendant that strained his marriage, and knew the defendant was mentally unstable.[364] The court in *GNOFHAC,* relied on *Ulmer v. Frisard*, a case decided by

---

[359] "Louisiana law provides that employment contracts are either limited term or terminable at will." *Read v. Willwoods Cmty.*, 2014-1475 (La. 3/17/15); 165 So. 3d 883, 887. A limited term contract exists where "the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause." *Id*. If the parties are "silent on the terms of the employment contract, the Civil Code provides the default rule of employment-at-will." *Id*. (citing La. Civ. Code art. 2747).

[360] Regardless, Roehm's employees' conduct does not rise to the level of extreme and outrageous under Louisiana law. *See Stewart v. Par. of Jefferson*, 95-407 (La. App. 5 Cir. 1/30/96), 668 So. 2d 1292 (holding that intentional infliction of emotional distress was not shown, even though the supervisor harassed the employee for two years, leading the employee to accept a demotion which ultimately led to termination); *Pate v. Pontchartrain Partners, LLC*, No. 13–6366, 2014 WL 5810521, at 5* (E.D. La. Nov. 7, 2014) (holding that the termination of plaintiff's employment eight months into her pregnancy did not constitute extreme and outrageous conduct); *Mahl v. Nokia*, 212 F App'x 279, 280–81 (5th. Cir. 2006) (holding that employer's sending employee termination notice only days after Hurricane Katrina did not rise to level of extreme and outrageous conduct).

[361] Rec. Doc. 50-1 at 19–20.

[362] 13-6769, 2014 WL 1652514 (E.D. La. Apr. 23, 2014).

[363] Rec. Doc. 50-1 at 19.

[364] *GNOFHAC*, 2014 WL 1652514, at *1, 4*, *5; *DirecTV, Inc. v. Atwood*, No. 03–1457, 2003 WL 22765354 (E.D. La. Nov. 19, 2003) (Engelhardt, J.) (Filing suit "is embraced in this and most civilized communities. Thus, regardless of plaintiff's alleged motive – whether it be tortious, malicious, or even criminal – the alleged conduct itself simply does not rise to the level of extreme and outrageous.")).

the Louisiana Fifth Circuit Court of Appeal.[365] In *Ulmer*, the appellate court held that the cross-claimant defendant failed to state an IIED claim even though the plaintiff engaged in the pre-litigation tactic of threatening the defendant with continued litigation and financial ruin.[366] Oliver does not distinguish her claim from those in *GNOFHAC* and *Ulmer*. Like the defendants in those cases, Oliver relies on Brown and Stillufsen's supposedly false allegations and threats of litigation to support the IIED Claim.[367] However, such conduct is not sufficiently extreme and outrageous to support the IIED Claim.

Nevertheless, Oliver argues that the alleged conduct was sufficiently extreme and outrageous in this case because Stillufsen violated New York Disciplinary Rule 7-105(a) by "threaten[ing] to present criminal charges solely to obtain an advantage in a civil matter."[368] However, the Court finds this argument unavailing because the Second Amended Complaint does not allege that Stillufsen threatened to present criminal charges, but rather "threatened to sue her."[369] Thus, the Court finds that Oliver fails to plead that the conduct of Roehm, or its employees, met the high bar of "extreme and outrageous" sufficient to sustain an IIED Claim. Therefore, the IIED Claim against Roehm must be dismissed.

## V. Conclusion

Roehm's motion is granted in part and denied. The Court grants the motion to dismiss with respect to Oliver's ADA Discrimination Claim, ADA Retaliation Claim, and Title VII Claim to

---

[365] 97-5 (La. App. 5 Cir. 4/29/97); 694 So .2d 1046.

[366] *Id*. at 1047, 1049.

[367] *See* Rec. Doc. 58 at 40.

[368] *Id*. at 39–40.

[369] Rec. Doc. 48 at 16.

the extent that these claims are based on Roehm allegedly refusing her tuition reimbursement, failing to promote her, denying her opportunities to work overtime, or failing to provide her raises prior to September 1, 2020, because they are time-barred. Likewise, Oliver's LEDL Disability Discrimination Claim, LEDL Gender Discrimination Claim, and LHRA Retaliation Claim are dismissed to the extent that they are based on such alleged actions that occurred prior to June 28, 2020, because they are prescribed. Oliver's claims are also dismissed to the extent that they are based on allegations of a hostile work environment. The ADA Discrimination Claim is dismissed to the extent it is based on Roehm's alleged failure to accommodate Oliver's disability. The ADA Retaliation claim is dismissed to the extent that it seeks compensatory and punitive damages. The LHRA Retaliation claim is dismissed to the extent that it asserts a discrimination or failure to accommodate claim against Roehm. The LUTPA Claim and the IIED Claim are dismissed in their entirety. However, Roehm's motion is denied in all other respects. Accordingly,

**IT IS HEREBY ORDERED** that Roehm's Motion to Dismiss the Second Amended Complaint[370] is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** to the extent that it seeks dismissal of any claim: (1) under the ADA or Title VII based on any alleged discrete employment action that occurred prior to September 1, 2020;  (2)  under the LEDL or LHRA based on any alleged discrete employment action that occurred prior to June 28, 2020; (3) based on an alleged hostile work environment; (4) based on an alleged failure to accommodate under the ADA; (5) for compensatory

---

[370] Rec. Doc. 50.

and punitive damages for retaliation in violation of the ADA; (6) based on alleged discrimination and failure to accommodate under the LHRA; (7) under LUTPA; (8) and for IIED. The motion is **DENIED** in all other respects.

      **NEW ORLEANS, LOUISIANA,** this 20th day of October, 2022.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

63