UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHELSEA OLIVER                                          CIVIL ACTION

VERSUS                                                 NO. 21-1831

ROEHM AMERICA, LLC et al.                              SECTION: "G"(4)

## ORDER AND REASONS

This litigation arises from an alleged controversy over Defendant Roehm America, LLC's ("Roehm") termination of Plaintiff Chelsea Oliver ("Oliver").[1] Oliver brings claims against Chubb Insurance Company of New Jersey ("Chubb") and Federal Insurance Company ("Federal") (collectively, "Insurers") under Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] the Americans with Disabilities Act ("ADA"),[3] the Family and Medical Leave Act of 1993 ("FMLA"),[4] the Employee Retirement Income Security Act ("ERISA"),[5] and Louisiana law. Before the Court is Insurers' Motion to Dismiss.[6] In the motion, Insurers argue that Oliver's Second Amended Complaint[7] fails to state a claim against them and so all of the claims against

---

[1] *See* Rec. Doc. 48.

[2] 42 U.S.C. § 2000e *et seq.*

[3] § 12101 *et seq.*

[4] 29 U.S.C. § 2601 *et seq.*

[5] § 1001 *et seq.*

[6] Rec. Doc. 66.

[7] Rec. Doc. 48.

1

Insurers should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] Chubb also joins Roehm's motion to dismiss[9] as its insured and argues that, "[t]o the extent that motion is granted, the claim pursuant to the Louisiana Direct Action Statute[10] against Chubb should also be dismissed."[11] Oliver opposes the motion.[12] Insurers reply in further support of the motion.[13] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part. Specifically, the Court dismisses all claims against Federal without prejudice. The Court also dismisses with prejudice all claims against Chubb that have been dismissed against Roehm.[14]

## I. Background

On October 5, 2021, Oliver filed a Complaint in this Court against Roehm, Yolanda Brown ("Brown"), and Andrew Stillufsen ("Stillufsen").[15] On December 12, 2021, Oliver filed a First Amended Complaint.[16] On March 29, 2022, Oliver filed the instant Second Amended Complaint naming Roehm, Brown, Stillufsen, and Insurers as defendants (collectively, "Defendants").[17] In the Second Amended Complaint, Oliver alleges that Chubb is a wholly owned subsidiary of

---

[8] Rec. Doc. 66.

[9] Rec. Doc. 50.

[10] La. Rev. Stat. § 22:1269.

[11] Rec. Doc. 66 at 2.

[12] Rec. Doc. 68.

[13] Rec. Doc. 71.

[14] *See* Rec. Doc. 77.

[15] Rec. Doc. 1.

[16] Rec. Doc. 17.

[17] Rec. Doc. 48.

Federal that provides employment practices liability insurance to Roehm.[18] Oliver contends that she was hired by Evonik Cyro, LLC ("Evonik") in March 2017 to work at a methacrylate production facility located at 10800 River Road, Westwego, Louisiana (the "Facility") as an administrative assistant and was one of only four female employees at the Facility.[19] Oliver avers that Roehm became the owner of the Facility in September 2019.[20] Oliver contends that, when she was hired, she was told "that [Evonik] had a tuition reimbursement policy;" however, upon beginning her employment, she was told that the policy only applied to management and, despite earning merit raises and bonuses, she was not granted tuition reimbursement nor promoted through June 2019.[21] In July 2019, Oliver alleges that she submitted another request for reimbursement and was told "that she was in fact eligible for tuition reimbursement."[22] Thus, "she submitted the necessary paperwork, and yet, never received any reimbursement."[23]

Oliver alleges that, after Roehm took over the Facility, new managers were hired and new policies were initiated, but the tuition reimbursement policy stayed the same; yet, the interim Plant Manager, Drew Scott ("Scott"), never granted her tuition reimbursement despite telling her she was eligible and that other male employees were receiving reimbursement.[24] Oliver avers that, although Scott ignored her requests for a raise, promotion, and tuition reimbursement through

---

[18] *Id*. at 3.

[19] *Id*. at 3, 5.

[20] *Id*. at 3.

[21] *Id*. at 5–6.

[22] *Id*. at 6.

[23] *Id*. Oliver alleges that she paid $17,063.56 in tuition during this time that should have been reimbursed. *Id*. at 7.

[24] *Id*.

January 2020, Scott encouraged male employees to take classes, offered them tuition reimbursement, waived educational requirements for promotion for one employee who declined to take classes, and gave a "spot bonus" to another who took classes but declined the reimbursement terms.[25]

Oliver contends that, in February 2020, Roehm hired Brown as a human resources manager and site manager of the Facility.[26] Oliver alleges that, in March 2020, Oliver requested and received approval for FMLA leave from March 3, 2020, until March 15, 2020, "for a knee surgery her physician suggested she undergo" due to chronic pain ( "First FMLA Leave").[27] Oliver avers that, after her First FMLA Leave, she worked from home based on Scott's instructions due to COVID-19 and her doctor's recommendation; however, she was removed from remotely-held meetings she had previously attended and was barred from working overtime despite previously working hundreds of overtime hours per year.[28]

Oliver alleges that, in August 2020, her doctor determined the knee surgery had failed and she required a second surgery. Therefore, she was granted FMLA leave from August 18, 2020, until August 30, 2020,[29] which was extended until October 30, 2020 ("Second FMLA Leave").[30] Oliver contends that, "[i]mmediately after she left for [her Second FMLA Leave], [] Brown started

---

[25] *Id*. at 7–8. Oliver alleges that, meanwhile "in 2020, a female contractor left because she felt she was subjected to a hostile work environment based on her gender." *Id*. at 7.

[26] *Id*. at 8.

[27] *Id*. at 9.

[28] *Id*. at 9–10.

[29] *Id*. at 11.

[30] *Id*. Oliver alleges that she utilized Roehm's group health benefits program and disability benefits during both her First FMLA Leave and Second FMLA Leave. *Id*. at 9, 11.

building up a case to terminate [her]" by "investigating her hours and timesheets."[31] Oliver avers that, on August 30, 2020, she submitted comments as part of her performance review requesting a promotion, never heard back from her supervisor, and was terminated on October 6, 2020, during a call from Brown, Stillufsen, as Roehm's General Counsel, and Roehm's Corporate Vice President of Human Resources.[32] During the phone call, Oliver alleges that Brown told her she should be at work based on Facebook photos Oliver had posted playing with her child and accused her of falsifying her FMLA leave, disability pay, and overtime requests.[33] Oliver contends that, from January 2020 to March 2020, she alerted Roehm that numerous male employees falsified their hours but these employees "were never disciplined."[34] Furthermore, Oliver asserts that a male employee on extended leave due to a shoulder and back injury "posted numerous photos on Facebook . . . [of him] enjoying time with his family, including traveling and carrying his grandchildren," but "was not terminated, investigated or disciplined in anyway."[35]

Oliver alleges that, after her termination, Stillufsen responded to her letter alleging Roehm had violated her legal rights by threatening to sue her for over $71,000 in approved overtime and

---

[31] *Id*. at 12.

[32] *Id.* at 12–13. Oliver alleges that, after she began her Second FMLA Leave, but prior to her termination, unbeknownst to her, her supervisor "posted several job positions for which [she] was qualified" and Brown informed Roehm's staff not to communicate with her during her leave. *Id*. at 12. Oliver alleges that, after she was terminated, Roehm hired a man to one of the new positions who had never taken FMLA leave. *Id.*

[33] *Id*. at 14. Oliver alleges that Brown and Stillufsen refused her request to "look at her notes" when they asked her about specific hours she worked on days in December 2019 and April 2020, threatened to make her repay wages to Roehm, and sent her a letter "claiming that even after her termination 'there is still an ongoing investigation' into her." *Id*.

[34] *Id*. at 15.

[35] *Id*.

short-term disability pay.[36] Oliver contends that, on June 28, 2021, she filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Roehm "alleging disability and gender discrimination, and retaliation" (the "EEOC Charge").[37] Oliver alleges that she was issued a notice of right to sue by the EEOC on December 21, 2021.[38] Oliver avers that she was replaced at Roehm by "a man who had not engaged in protected activity under federal or state law and did not have any disabilities."[39] Finally, Oliver asserts that Chubb and Federal "provided a contract of insurance to Roehm that is applicable to the claims asserted" in the Second Amended Complaint.[40]

In the Second Amended Complaint, Oliver brings eleven claims against Insurers: (1) interference with and retaliation for Oliver's exercise of her FMLA rights ("FMLA Claim");[41] (2) disability discrimination and failure to accommodate Oliver's disability in violation of the ADA ("ADA Discrimination Claim");[42] (3) retaliation for Oliver's request for disability accommodation in violation of the ADA ("ADA Retaliation Claim");[43] (4) disability discrimination and failure to accommodate Oliver's disability in violation of the Louisiana Employment Discrimination Law

---

[36] *Id*. at 16.

[37] *Id*. Oliver alleges that, in his response submitted to the EEOC, Stillufsen stated that Oliver's performance was below expectations, even though "her supervisors never provided this feedback during her employment" and threatened to sue her for $25,901 in overtime pay if she pursued her claims. *Id*. at 16–17.

[38] *Id*. at 4.

[39] *Id.* at 17.

[40] *Id*.

[41] *See id.* at 17–19.

[42] *Id*. at 19–21.

[43] *Id*. at 21–22.

("LEDL") ("LEDL Disability Discrimination Claim");[44] (5) gender discrimination in violation of Title VII ("Title VII Claim");[45] (6) gender discrimination in violation of the LEDL ("LEDL Gender Discrimination Claim");[46] (7) retaliation for opposing an unlawful practice under the LEDL in violation of the Louisiana Human Rights Act ("LHRA") ("LHRA Retaliation Claim");[47](8) retaliation for Oliver's use of an employee group health insurance and short-term disability policy in violation of ERISA ("ERISA Claim");[48] (9) use of unfair and deceptive trade practices by promising Oliver protected time off and then firing her "for receiving treatment for [her] knee injury before that time expired in violation of the Louisiana Unfair Trade Practice Act ("LUTPA") ("LUTPA Claim");[49] (10) intentional infliction of emotional distress for terminating Oliver after promising her protective leave to recover from her knee surgery and then repeatedly threatening to sue in violation of Louisiana law ("IIED Claim") (collectively, "Employment Claims");[50] and (11) provision of a contract of insurance to Roehm under which Insurers are liable for Roehm's actions against Oliver pursuant to Louisiana Revised Statute § 22:1269 ("Direct Action Statute") ("Insurance Claim").[51]

---

[44] *See* La. Rev. Stat. § 23:301 *et seq*.; Rec. Doc. 48 at 22–24.

[45] Rec. Doc. 48 at 25–26.

[46] *Id*. at 26–27.

[47] *See* La. Rev. Stat. § 23:661 *et seq*.; Rec. Doc. 48 at 28–29.

[48] Rec. Doc. 48 at 29–30.

[49] *See* La. Rev. Stat. § 51:1401 *et seq*.; Rec. Doc. 48 at 31–32.

[50] Rec. Doc. 48 at 32–33.

[51] *Id*. at 33–34.

On June 21, 2022, Insurers filed the instant "Motion to Dismiss."[52] On July 5, 2022, Oliver filed an opposition to the motion.[53] On July 15, 2022, Insurers filed a reply in further support of the motion.[54]

## II. Parties' Arguments

### A.   Insurers' Arguments in Support of the Motion

Insurers argue that the Court should dismiss all claims pending against them.[55] In support of the motion, Insurers advance three arguments. First, Insurers argue that all claims against Federal should be dismissed "because Federal is not specifically alleged to be the insurer of Roehm, Brown, Stillufsen, or any other defendant or third-party tortfeasor."[56] Insurers aver that Oliver "only vaguely alleges that Federal 'provid[ed] a policy of insurance coverage on behalf of [Roehm];'" however, Insurers assert that Oliver only alleges one contract of insurance and that policy was issued by Chubb, not Federal.[57] Therefore, Insurers conclude that, because a claim under the Direct Action Statute can only be brought "against the insurer" of the alleged tortfeasor, and Federal is not an insurer of an alleged tortfeasor in this action, the claims against Federal should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[58]

---

[52] Rec. Doc. 66.

[53] Rec. Doc. 68.

[54] Rec. Doc. 71.

[55] *See* Rec. Doc. 66.

[56] Rec. Doc. 66-1 at 8.

[57] *Id*. at 8–9.

[58] *Id*. at 9.

Second, Insurers argue that all Employment Claims should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) because Insurers were not Oliver's employers and "played no part in the allegedly unlawful termination and retaliation [Oliver] faced while employed at Roehm."[59] Specifically, Insurers argue that Oliver's FMLA Claim, ADA Discrimination Claim, ADA Retaliation Claim, Title VII Claim, LEDL Disability Discrimination Claim, LEDL Gender Discrimination Claim, and LHRA Retaliation Claim should be dismissed because such claims can only be brought against an employer and Insurers were never Oliver's employers.[60] Insurers further argue that the ERISA Claim should be dismissed because "[Oliver] does not allege nor can she allege that [Insurers] were in any position to punish her for exercising any right under a plan covered by ERISA . . ., nor does [Oliver] allege that [Insurers] had any control over or involvement in such a plan to begin with."[61] Finally, Insurers aver that the LUTPA Claim and the IIED Claim should be dismissed because they "are based on allegedly unlawful employment-related conduct which [Oliver] does not and cannot allege that [Insurers] are responsible for" given that they "were [never] in any employment relationship with [Oliver]."[62] Therefore, Insurers conclude that the Employment Claims against them should be dismissed for failure to state a claim.[63]

---

[59] *Id*. at 4–5.

[60] *Id*. at 5. Insurers further argue that Oliver specifically states that it is Roehm who engaged in the alleged unlawful conduct, not Insurers. *Id*. at 6.

[61] *Id*. at 6.

[62] *Id*. at 7. Therefore, Insurers assert that they could not have terminated Oliver for taking approved time off, in violation of LUTPA, nor inflicted emotional distress by terminating and then threatening to sue her. *Id*.

[63] *Id*. at 5.

Third, Insurers also argue that the Insurance Claim should be dismissed "because Plaintiff has failed to state any claim against Roehm, the recipient of Chubb's insurance policy.[64] Therefore, "Chubb joins Roehm's [motion to dismiss][65] and likewise urges this Court to dismiss all claims against Roehm for the reasons stated therein."[66] Insurers argue that, assuming Roehm's motion is granted, the Insurance Claim is purely derivative and "consequently [Oliver] will have no derivative direct action claim against Chubb."[67] For these reasons, Insurers argue that this Court should dismiss all claims against them.[68]

## B.    *Oliver's Arguments in Opposition to the Motion*

In opposition, Oliver agrees that Federal should be dismissed so long as it "is not responsible for providing employment practices liability to [Roehm, Brown, or Stillufsen]."[69] Nevertheless, Oliver contends that Chubb is a subsidiary of Federal and, because Insurers "are the ones with knowledge of their contracts and corporate structure," Insurers should "bare their own fees and costs and such dismissal [should] be without prejudice to [Oliver]'s ability to re-name [Federal] should she learn in discovery that there is a basis for liability."[70]

However, Oliver argues that the Employment Claims against Chubb should not be dismissed "because the Direct Action Statute allows such claims to be brought directly against an

---

[64] *Id*.

[65] Rec. Doc. 50.

[66] Rec. Doc. 66-1 at 9.

[67] *Id*. at 9–10.

[68] *Id*. at 10.

[69] Rec. Doc. 68 at 5.

[70] *Id*.

insurer."[71] Oliver avers that Insurers even acknowledge in their motion that Chubb's liability is based on Roehm's liability.[72] Even though Oliver acknowledges that "there would be no derivative liability against [Chubb] for any claims where no primary liability is found," Oliver disagrees that the claims against Roehm should be dismissed and incorporates by reference Oliver's opposition to Roehm's motion to dismiss.[73]

## C.    *Insurers' Arguments in Further Support of the Motion*

Insurers reply in further support of the Motion and make three arguments.[74] First, Insurers argue that the Employment Claims should be dismissed because Oliver "cites to no authority which support the proposition that the Direct Action Statute allows for federal and state employment-related causes of action to be brought directly against insurers."[75] Rather, Insurers assert that the statute "instead contains its *own* private right of action provision" whereby "injured persons 'shall have a right of direct action against the insurer,'" and Oliver asserts that right of direct action through the Insurance Claim.[76] Therefore, Insurers conclude that the Employment Claims should be dismissed because the Direct Action Statute "does not translate to direct liability under any other law."[77]

---

[71] *Id.* at 4.

[72] *Id*.

[73] Rec. Doc. 58; Rec. Doc. 68 at 5–6.

[74] *See* Rec. Doc. 71.

[75] *Id*. at 1–2.

[76] *Id*. at 2 (quoting La. Rev. Stat. § 22:1269(B)(1)).

[77] *Id*.

11

Second, Insurers reassert that the Insurance Claim against Federal should be dismissed because Federal "does not provide any. . . relevant insurance coverage."[78] Third, Insurers reassert that the Insurance Claim against Chubb should be dismissed if Roehm's motion to dismiss is granted, given that Oliver agrees that there would be no derivative liability in that scenario.[79] Thus, Insurers argue that Oliver's claims against them should be dismissed.[80]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[81] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[82] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[83] "Factual allegations must be enough to raise a right to relief above the speculative level."[84] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[85]

---

[78] *Id.* at 3.

[79] *Id*.

[80] *Id*.

[81] Fed. R. Civ. P. 12(b)(6).

[82] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[83] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[84] *Twombly*, 550 U.S. at 555.

[85] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[86] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[87] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[88] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[89] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[90] That is, the complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."[91] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[92] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[93]

---

[86] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[87] *Iqbal*, 556 U.S. at 678–79.

[88] *Id.* at 679.

[89] *Id.* at 678.

[90] *Id.*

[91] *Id.*

[92] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[93] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dist.*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

## IV. Analysis

Insurers move the Court to dismiss Oliver's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[94] Insurers argue: (1) the claims against Federal should be dismissed because Federal did not provide an insurance policy to Roehm; and (2) the claims against Chubb should be dismissed because the Direct Action Statute does not allow a plaintiff to bring substantive claims against an insurer and because Oliver fails to state a claim against Roehm.[95] In opposition, Oliver argues: (1) although it agrees that the claims against Federal can be dismissed, such dismissal should be without prejudice; and (2) the claims against Chubb should not be dismissed because the Direct Action Statute allows her to bring claims directly against Roehm's insurer.[96]

As an initial matter, the Court considers Federal's dismissal. The parties agree that the dismissal of Federal is appropriate if Federal does not insure Roehm, Brown, Stillufsen, or any other defendant or third-party tortfeasor.[97] Insurers represent that "Federal has issued no policy relevant to this case" and that the only "policy under which [Oliver] claims her injuries are covered" was issued by Chubb.[98] Based on this representation, Oliver agrees that the claims against Federal should be dismissed but that, because Chubb is a subsidiary of Federal, and because Insurers "are the ones with knowledge of their contracts and corporate structure," Insurers should

---

[94] Rec. Doc. 66.

[95] *See* Rec. Docs. 66-1, 71.

[96] Rec. Doc. 68.

[97] Rec. Doc. 66-1 at 8; Rec. Doc. 68 at 5.

[98] Rec. Doc. 66-1 at 8.

"bare their own fees and costs and such dismissal [should] be without prejudice to [Oliver]'s ability to re-name [Federal] should she learn in discovery that there is a basis for liability."[99]

Federal Rule of Civil Procedure 41(a)(2) states, in pertinent part, that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." The Court construes Oliver's statements regarding her claims against Federal in her opposition to the instant motion as a request for Federal's voluntary dismissal. Given the early stage of this litigation and given that Oliver's request is based on the Insurer's representations in the instant motion, the Court considers it proper to grant Oliver's request to dismiss Federal without prejudice.

The Court next turns to the issue of whether the claims against Chubb should be dismissed. Insurers argue that the Employment Claims against Chubb should be dismissed because the Direct Action Statute provides a separate cause of action for a plaintiff to bring claims against a tortfeasor's insurer. Oliver argues that the Employment Claims against Chubb should not be dismissed because the Direct Action Statute allows her to bring those claims directly against Roehm's insurer. Louisiana Revised Statute § 22:1269(B)(1), known as the Direct Action Statute, "affords a victim the right to sue the insurer directly when the liability policy covers a certain risk."[100] The statute pertinently provides: "The injured person . . . shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer."[101]

---

[99] Rec. Doc. 68 at 5.

[100] *Soileau v. Smith True Value & Rental*, 2012-1711 (La. 8/30/2013); 144 So. 3d 771, 780; *see also* La. Rev. Stat. § 22:1269.

[101] La. Rev. Stat. § 22:1269(B)(1).

The Louisiana Supreme Court has explained that "[t]he Direct Action Statute affords a victim the right to sue the insurer directly when the liability policy covers a certain risk."[102] However, the Direct Action Statute does not "extend the protection of the liability policy to risks that were not covered by the policy."[103] Oliver concedes that she may only sue Chubb within the terms and limits of the employment practices liability insurance policy because she agrees with Insurers that Chubb is only liable as an insurer, and not as Oliver's employer.[104] Oliver also agrees that her claims against Chubb are derivative of her claims against Roehm.[105] Thus, there is no actual dispute regarding the extent of Chubb's potential liability in this matter. Therefore, given that the Court already found in its prior Order and Reasons that Oliver states claims against Roehm under the FMLA, ADA, LEDL, LHRA, and Title VII,[106] Oliver also states these claims against Chubb within the terms and limits of the employment practices liability insurance policy.

## V. Conclusion

Oliver's claims against Federal are voluntarily dismissed without prejudice because Chubb represents that Federal did not provide any insurance policy relevant to this matter. However, Oliver's derivative claims against Chubb, as Roehm's insurer, are dismissed only to the extent that Oliver's claims against Roehm are dismissed and to the extent that Oliver's claims against Chubb are outside the terms and limits of Roehm's employment practices liability insurance policy.

Accordingly,

---

[102] *Soileau*, 144 So. 3d at 780.

[103] *Id*.

[104] *See* La. Rev. Stat. § 22:1269(B)(1); Rec. Doc. 68 at 4.

[105] *Id*. at 5–6.

[106] *See* Rec. Doc. 77 at 62–63.

**IT IS HEREBY ORDERED** that Insurers' Motion to Dismiss[107] is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** to the extent that it seeks dismissal of Oliver's claims against Chubb that are dismissed against Roehm[108] and to the extent that Oliver's claims against Chubb are outside the terms and limits of the employment practices liability insurance policy that Chubb provided to Roehm. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that all claims against Defendant Federal Insurance Co. are **DISMISSED WITHOUT PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this 20th day of October, 2022.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[107] Rec. Doc. 66.

[108] *See* Rec. Doc. 77.

17